[No. C039437. Third Dist. June 27, 2002.]

KAISER FOUNDATION HEALTH PLAN, INC., Plaintiff and
Respondent, v.
DANIEL ZINGALE, as Director, etc., Defendant and Appellant.

COUNSEL

Joan W. Cavanagh, James F. Novello and Brenda Ray for Defendant and Appellant.

Quinn Emanuel Urquhart Oliver & Hedges, Steven G. Madison and Joseph N. Akrotirianakis for Plaintiff and Respondent.

OPINION

**NICHOLSON, J.**—The California Department of Managed Health Care (Department) ordered Kaiser Foundation Health Plan, Inc. (Kaiser) to continue providing coverage for prescription drugs, such as Viagra, to treat sexual dysfunction. Kaiser petitioned for a writ of administrative mandamus, and the trial court determined that such compulsion is beyond the Department's statutory authority. The Department appeals. ▮ We also conclude the Department does not have authority to compel Kaiser to continue covering prescription drugs to treat sexual dysfunction.

## THE KNOX-KEENE HEALTH SERVICE PLAN ACT

The Knox-Keene Health Service Plan Act of 1975 (Act) was enacted, and amended through the years, "to promote the delivery of health and medical care to the people of the State of California who enroll in, or subscribe for the services rendered by, a health care service plan . . . ." (Health & Saf. Code, § 1342; hereafter, unspecified statutory references are to the Health and Safety Code.) Among the stated goals of the Act are (1) "[e]nsuring the continued role of the professional as the determiner of the patient's health needs which fosters the traditional relationship of trust and confidence between the patient and the professional" (§ 1342, subd. (a)) and (2) "[e]nsuring that subscribers and enrollees receive available and accessible health and medical services rendered in a manner providing continuity of care" (§ 1342, subd. (g)).

Under the Act, a health care service plan must provide all "basic health care services." (§ 1367, subd. (i).) However, "basic health care services" does not include prescription drug benefits. (See § 1345, subd. (b) [defining "basic health care services"].) Each health care service plan must be fair, reasonable, and consistent with the Act. (§ 1367, subd. (h)(1).)

In article 5 of the Act, the Legislature imposes standards on health care service plans. From a provision requiring all health care facilities utilized by the plan to be licensed by the State Department of Health Services (§ 1367, subd. (a)) to a requirement that plans establish and implement a procedure for a patient needing continuing care to receive a standing referral to a specialist (§ 1374.16, subd. (a)), article 5 contains more than 100 code sections full of standards a health care service plan must abide by to do business in California. The standards cover a broad range of activities and reflect the public policy of California with respect to health care service plans.

The Department was created in 2000, with a director, appointed by the Governor, as chief officer to succeed the Department of Corporations in regulating health care service plans. (§ 1341; Stats. 1999, ch. 525, §§ 1, 214.) The statute establishing the Department, section 1341, gives the Department "charge of the execution of the laws of this state relating to health care service plans and the health care service plan business including, but not limited to, those laws directing the department to ensure that health care service plans provide enrollees with access to quality health care services and protect and promote the interests of enrollees." (*Id.*, subd. (a).) The director has power to "[p]romote and establish standards of ethical

conduct for the administration of plans and undertake activities to encourage responsibility in the promotion and sale of plan contracts and the enrollment of subscribers or enrollees in the plans." (§ 1346, subd. (a)(9).)

In article 3 of the Act, concerning licensing of health care service plans and fees to be paid by those plans, the Legislature requires a health care service plan to file notice with the Department before taking specified actions. (§ 1352.1.) Subdivision (a) of section 1352.1 provides: "[N]o plan shall enter into any new or modified plan contract . . . unless (1) a true copy thereof has first been filed with the director, at least 30 days prior to any such use, or any shorter period as the director by rule or order may allow, and (2) the director by notice has not found the plan contract, disclosure form, or evidence of coverage, wholly or in part, to be untrue, misleading, deceptive, or otherwise not in compliance with this chapter or the rules thereunder, and specified the deficiencies, within at least 30 days or any shorter time as the director by rule or order may allow."

### FACTS AND PROCEDURE

In 1998, Kaiser, a health care service plan provider in California, submitted a proposed plan amendment to the Department of Corporations for approval. Kaiser's health care service plan includes an outpatient prescription drug benefit. The proposed amendment would exclude prescription drugs for the treatment of sexual dysfunction.

The Commissioner of Corporations determined the proposed amendment did not comply with the Act and, therefore, disapproved the proposed amendment, stating that it was his policy to forbid exclusion of any class of prescription drugs. Kaiser requested an administrative hearing on the issue. It was presented to an administrative law judge, who issued a proposed decision finding the Act did not give the Department of Corporations the authority to disapprove Kaiser's proposed plan amendment for the reason given.

In 2000, the Department of Managed Health Care, succeeding the Department of Corporations under amendments to the Act, rejected the decision of the administrative law judge and upheld the earlier action of the Department of Corporations. Director Daniel Zingale issued a decision finding Kaiser's proposed plan amendment violated the Act. The decision based disapproval of the proposed plan amendment on the Department's belief that it could require a health care service plan to cover all medically necessary prescription drugs if the plan chose to offer any prescription drug coverage at all. The decision did not find Kaiser violated the Act in the manner of giving notice of the proposed amendment. (See § 1352.1.)

Kaiser filed a petition for writ of administrative mandamus in the trial court. In a complete and well-reasoned ruling, the trial court concluded that the Department did not have statutory authority to disapprove Kaiser's plan amendment simply because the proposed plan did not cover prescription drugs for the treatment of sexual dysfunction. The court ordered issuance of a writ of mandate requiring the Department to set aside its disapproval of Kaiser's proposed amendment and to approve the amendment. The Department appeals.

## DISCUSSION

The Department argues that it has authority to regulate prescription drug coverage when that coverage is offered as part of a health care service plan. Kaiser does not dispute this point. Indeed, that point was never in dispute. Kaiser recognized the Department's authority by submitting the proposed amendment to the Department's predecessor as required under the Act. (See § 1352.1, subd. (a).) Accordingly, we begin with the premise that the Department has regulatory authority over the proposed amendment to Kaiser's health care service plan. The disputed issue is whether, under the circumstances of this case, the Department had authority to disapprove the proposed amendment.

The trial court found the Act does not give the Department the power it seeks here to exercise. When, as here, the facts are not at issue but only statutory interpretation remains, we apply our independent judgment. (*City of Poway v. City of San Diego* (1991) 229 Cal.App.3d 847, 859 [280 Cal.Rptr. 368].) ■ "In interpreting a statute where the language is clear, courts must follow its plain meaning. [Citation.] However, if the statutory language permits more than one reasonable interpretation, courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute. [Citation.] In the end, we ' "must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.]" (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57].)

■ If a state agency was created by statute, the agency's authority is circumscribed by the relevant legislation. (*Carmel Valley Fire Protection Dist. v. State of California* (2001) 25 Cal.4th 287, 299-300 [105 Cal.Rptr.2d 636, 20 P.3d 533].) " '[T]he powers of public [agencies] are derived from the

statutes which create them and define their functions.' [Citation.]" (*Imperial Irrigation Dist. v. State Wat. Resources Control Bd.* (1990) 225 Cal.App.3d 548, 567 [275 Cal.Rptr. 250].) "[A]dministrative regulations may not exceed the scope of authority conferred by the Legislature." (*State Bd. of Education v. Honig* (1993) 13 Cal.App.4th 720, 750 [16 Cal.Rptr.2d 727].) "Administrative action that is not authorized by, or is inconsistent with, acts of the Legislature is void." (*Association for Retarded Citizens v. Department of Developmental Services* (1985) 38 Cal.3d 384, 391 [211 Cal.Rptr. 758, 696 P.2d 150].) Here, the Department was created and empowered by the Act. The Department, therefore, has only the power delegated to it in the Act.

■ On its face, the Act simply does not authorize the Department to assert the power it here seeks to assert. If the Legislature had intended to require every health care service plan that offers a prescription drug benefit to cover all medically necessary prescription drugs or to allow the Department to impose that requirement, it would have been simple for the Legislature to say so. The Department promulgated a regulation purporting to exercise that power. Discussed below, the regulation states: "Every health care service plan that provides prescription drug benefits shall provide coverage for all medically necessary outpatient prescription drugs." (Cal. Code Regs., tit. 28, § 1300.67.24, subd. (a).) The Legislature, however, has not enacted this requirement and has not indicated the Department may do so. Nonetheless, the Department asserts its authority to impose this requirement can be found in the Act. It urges us to find the Act gives it "general regulatory discretion" and allows it to require Kaiser to cover prescriptions drugs for sexual dysfunction. Even assuming there is some ambiguity in the Act concerning the powers of the Department, we conclude that resort to principles of statutory construction still do not lead to an interpretation favorable to the Department's position.

The Department asserts the Legislature intended to require a prescription drug benefit offered as part of a health care service plan to include all medically necessary prescription drugs. This intent, the Department claims, appears in section 1367.24, which requires the plan to "maintain an expeditious process by which prescribing providers may obtain authorization for a medically necessary nonformulary prescription drug." (§ 1367.24, subd. (a).) The Department argues the word "authorization" refers to payment for the prescription drug, while Kaiser contends the word "authorization" refers only to use of a nonformulary prescription drug in the place of a formulary drug and has nothing to do with whether the drug is covered under the prescription drug benefit. A review of the legislative history of section 1367.24 and placement of this provision in the context of the Act, as a whole, support Kaiser's view.

■ A formulary is a list of prescription drugs approved by the health care service plan. (American Medical Association, Council on Ethical and Judicial Affairs, *Managed Care Cost Containment Involving Prescription Drugs* (1998) 53 Food Drug L.J. 25.) Under section 1367.24, a physician may obtain authorization to prescribe a drug that is not on the formulary. Although there may be a preferred drug on the formulary for treatment of the specific condition, the physician can obtain authorization for a drug not on the formulary if it is medically necessary to do so.

An Assembly committee report concerning section 1367.24 states: "According to the author, this bill will ensure that financial incentives and penalties do not improperly influence decisions regarding prescription drug benefits provided to health maintenance organization (HMO) patients. The author is primarily concerned with overly restrictive drug formularies and drug switching programs that steer patients towards cheaper drugs. The author asserts that patients, doctors, and pharmacists are complaining that HMO medication decisions are being driven by cost savings rather than sound medical judgment. According to the author, research indicates that this drug cost-cutting practice actually results in higher long-term costs associated with extended illnesses, more visits to doctors and emergency rooms, and greater overall drug use." (Assem. Com. on Health, Rep. on Sen Bill No. 625 (1997-1998 Reg. Sess.) as amended July 10, 1997, p. 3.)

■ This legislative history shows the Legislature was not attempting to prohibit health care service plans from limiting the conditions for which the plan would cover prescription drugs. Instead, the Legislature intended only to protect patients from "overly restrictive drug formularies and drug switching programs that steer patients towards cheaper drugs." Section 1367.24, therefore, does not require the prescription drug benefit of a health care service plan to cover prescription drugs for the treatment of every medical condition. Instead, it has the effect of preventing a health care service plan from steering patients toward cheaper drugs, even when the physician deems it medically necessary to prescribe the more expensive drug.

Section 1367.24 does not endow the Department with authority to require Kaiser to cover prescription drugs for sexual dysfunction. Instead, consideration of the Act, as a whole, leads to the conclusion the Legislature intended to allow health care service plans to limit the medical conditions for which prescription drugs are covered.

Of particular interest, the Act contains several provisions requiring health care service plans to cover prescription drugs to treat specific conditions.

The Act requires a health care service plan to provide coverage for pain medication for the terminally ill (§ 1367.215), contraceptives for women (§ 1367.25), an AIDS vaccine (§ 1367.45), and insulin for diabetics (§ 1367.51). The Act also prohibits plans from excluding from coverage a drug on the basis that it was prescribed for a use different from the use for which the drug was approved by the Food and Drug Administration. (§ 1367.21.) The Act does not contain a similar provision requiring a health care service plan to provide coverage for prescription drugs to treat sexual dysfunction.

If we were to adopt the Department's proposed interpretation of section 1367.24, requiring plans to cover all medically necessary prescription drugs, the provisions of the Act requiring plans to provide coverage for drugs for the treatment of specific conditions, such as AIDS and diabetes, would be superfluous. We cannot adopt the Department's interpretation because it violates the rule of statutory construction prohibiting an interpretation that renders a provision superfluous. (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 459 [279 Cal.Rptr. 834, 807 P.2d 1063].) On the other hand, the interpretation of section 1367.24 proposed by Kaiser is consistent with the legislative intent as seen in the legislative history and by reading the Act as a whole.

Another provision of the Act is evidence of the Legislature's intent not to require prescription drug benefits to cover all medically necessary prescription drugs. Subdivision (a) of section 1367.22 provides: "A health care service plan contract . . . that covers prescription drug benefits shall not limit or exclude coverage for a drug for an enrollee if the drug previously had been approved for coverage by the plan for a medical condition of the enrollee and the plan's prescribing provider continues to prescribe the drug for the medical condition . . . ."

Similar to the statutes mandating coverage of prescription drugs for specific conditions such as diabetes and AIDS, section 1367.22 requires a health care service plan to continue covering a prescription for an enrollee that has been taking the medication and continues to need it. This requirement is an exception to the Legislature's implicit intent *not* to mandate coverage of medically necessary prescription drugs. If the Legislature had intended to mandate coverage of all medically necessary prescription drugs, there would be no need for the exception stated in section 1367.22, just as there would be no need to enact statutes requiring health care service plans to cover prescription drugs to treat specific conditions, such as AIDS and diabetes.

Attempting to apply the maxim that "the more specific provision . . . takes precedence over the more general one" (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 857 [39 Cal.Rptr.2d 21, 890 P.2d 43]; see also Civ. Code, § 3534), the Department argues that, even though section 1367.22, requiring continued coverage of a drug already prescribed, appears to be an exception to a general rule that a health care service plan need not cover all medically necessary prescription drugs, the Department still has "general jurisdiction . . . to regulate all medically necessary prescription drugs." (See § 1367.22, subd. (c) [nothing in section restricts or impairs application of other provisions].) As noted above, however, even if the Department has general regulatory jurisdiction over health care service plans, the Act does not give the Department the authority to compel a plan to cover all medically necessary prescription drugs. To the contrary, the clear implication in the Act's provisions is that a health care service plan that includes coverage for prescription drugs need not cover any particular prescription drug except under the circumstances or for the conditions we have noted. If the Legislature intended to require the prescription drug benefit to include all medically necessary prescription drugs, subdivision (a) of section 1367.22 is superfluous. We, however, adopt the interpretation that gives each provision meaning. (See *Dix v. Superior Court, supra,* 53 Cal.3d at p. 459.)

The Department's regulatory authority over health care service plans, though it may be characterized as general, does not exceed the scope of authority granted by the Legislature in the Act. To the extent any departmental action exceeds the power delegated by the Legislature, the action is void. (See *Association for Retarded Citizens v. Department of Developmental Services, supra,* 38 Cal.3d at p. 391.) While there is no express provision of the Act giving, or taking away from, the Department authority to compel a health care service plan to cover all medically necessary prescription drugs if the plan provides prescription drug coverage at all, the unmistakable intent of the Legislature from a reading of the Act, as a whole, is that the Department does not have such power. Therefore, the order disapproving the amendment to Kaiser's health care service plan simply because it would not cover prescription drugs for sexual dysfunction when medically necessary was beyond the scope of the Department's authority and is void.

On November 3, 2000, the department promulgated section 1300.67.24 of the California Code of Regulations as an emergency regulation operative immediately. The regulation, promulgated the same day Kaiser filed its petition for writ of administrative mandamus in the trial court, expresses the Department's interpretation of section 1367.24, subdivision (a): "Every health care service plan that provides prescription drug benefits shall provide

coverage for all medically necessary outpatient prescription drugs." (Cal. Code Regs., tit. 28, § 1300.67.24, subd. (a).)

■ "The interpretations and opinions of an agency administrator, while not controlling upon the courts, constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 14 [78 Cal.Rptr.2d 1, 960 P.2d 1031] [(*Yamaha*)].) '[B]ecause the agency will often be interpreting a statute within its administrative jurisdiction, it may possess special familiarity with satellite legal and regulatory issues. It is this 'expertise,' expressed as an interpretation . . . that is the source of the presumptive value of the agency's views.' (*Id.* at p. 11.)" (*Exxon Mobil Corp. v. County of Santa Barbara* (2001) 92 Cal.App.4th 1347, 1357 [112 Cal.Rptr.2d 751].)

The Department, citing *Yamaha, supra,* 19 Cal.4th at pages 6 and 7, asserts its interpretation of a statute within the Act is "entitled to judicial consideration and respect." Kaiser responds that the general rule of deference to interpretations of statutes subject to the regulatory jurisdiction of agencies does not apply when the issue is the scope of the agency's jurisdiction. Kaiser's position is correct. ■ As noted in a footnote in *Yamaha*: "[Q]uasi-legislative rules are reviewed independently for consistency with controlling law. A court does not, in other words, defer to an agency's view when deciding whether a regulation lies within the scope of the authority delegated by the Legislature. The court, not the agency, has 'final responsibility for the interpretation of the law' under which the regulation was issued." (19 Cal.4th at p. 11, fn. 4; see also *Environmental Protection Information Center v. Department of Forestry & Fire Protection* (1996) 43 Cal.App.4th 1011, 1022 [50 Cal.Rptr.2d 892] [standard of review of challenges to "fundamental legitimacy" of quasi-legislative regulation is " 'respectful nondeference' "].)

■ Accordingly, we conclude section 1367.24 does not require health care service plans to provide coverage for all medically necessary outpatient prescription drugs, despite the Department's attempt to impose that requirement in California Code of Regulations, title 28, section 1300.67.24. Given this conclusion, we need not analyze the timing of the Department's promulgation of this regulation or the fact it was promulgated as an emergency regulation.

## DISPOSITION

The order granting Kaiser's petition for a writ of administrative mandamus is affirmed.

Scotland, P. J., and Morrison, J., concurred.