N.R. SMITH, Circuit Judge,
dissenting in part and concurring in part:
In our original opinion, we interpreted the word “Act” in the Parity Act’s 2003 implementing regulation (CaLCode Regs, tit. 28, § 1300.74.72(a)) to refer to the “Parity Act.” See Harlick v. Blue Shield of California, 656 F.3d 832, 845 (9th Cir. 2011). In my view, this interpretation of the word “Act” provided the lynchpin for our conclusion that the Parity Act was not limited by the provisions of the KnoxKeene Act. Therefore, we determined that the Parity Act mandated coverage for all “medically necessary” services by medical insurers. However, in Blue Shield’s Petition for Rehearing and Petition for Rehearing En Banc, Blue Shield argued for the first time that California’s Administrative Code Section 1300.45(a) (promulgated in 1976) defines “Act” to mean “the KnoxKeene Health Care Service Plan Act of 1975.” See Cal.Code Regs. tit. 28, § 1400.45(a).
After consideration of this argument, the panel now unanimously agrees that we incorrectly interpreted the text of the Parity Act’s implementation regulation in our original opinion. The majority’s amended opinion reflects our change in interpretation. See Revised Maj. Op. 714 (“We are willing to assume, as Blue Shield assumes, that the word ‘Act’ refers to the KnoxKeene Act.”). Yet despite this significant change in our textual interpretation, the majority remains convinced that our original interpretation of the Parity Act was still correct based on conflicting legislative history and “common sense.” Revised Maj. Op. 716.
I see it differently and am surprised by the majority’s conclusion. Once we agree that the word “Act” is referencing the Knox-Keene Act, the majority’s conclusion that “it does not follow that the coverage for severe mental illnesses mandated by the Mental Health Parity Act is restricted to the coverage for physical illnesses mandated by the Knox-Keene Act,” is a non sequitur. Revised Maj. Op. 714. This reference acts as a statutory limit on the type of benefits that insurers are required to cover. Thus, only the interpretation of the *722 Parity Act that adheres to this text is appropriate. Under this interpretation, an insurer need only provide services specifically required under the Parity Act and its implementing regulation, unless the insurer has voluntarily chosen to provide a non-mandated benefit for a physical condition and must therefore offer additional mental health benefits in parity with that coverage. Accordingly, “medical necessity” is necessary, but not independently sufficient for mental health coverage.
I. The Text of the Parity Act and Its Implementing Regulation
The Parity Act was passed in 1999, because “most private health insurance policies provide coverage for mental illness at levels far below coverage for other physical illnesses.” 1999 Cal. Stat. 3701. Thus, the Parity Act sought to ensure that mental health coverage would be provided in parity, or equal measure, as physical health coverage. As the majority has correctly summarized, all plans (coming within the scope of the Act) were mandated to provide coverage for “medically necessary treatment of severe mental illnesses.” Cal. Health & Safety Code § 1374.72(a). Subsection (b) of Section 1374.72 provides that “benefits shall include” outpatient services, inpatient hospital services, partial hospitalization services, and prescription drugs if the plan includes coverage for prescription drugs. Thus, the majority correctly notes that the important “threshold question is whether the list of benefits in subsection (b) is an exhaustive list of treatments that can qualify as ‘medically necessary.’ ” Revised Maj. Op. 712.
The majority notes that at least two district courts have interpreted language, similar to section (b) language, to indicate an exhaustive list. Revised Maj. Op. 712 (citing Wayne W. v. Blue Cross of Cal., No. 1:07-CV-00035, 2007 WL 3243610, at *4 (D.Utah Nov. 1, 2007); Daniel F. v. Blue Shield, of Cal., No. C09-2037, 2011 WL 830623, at *8-9 (N.D.Cal. Mar. 3, 2011)). Specifically, the district court in Daniel F. arrived at a very similar conclusion to the one that Blue Shield advocates here. 2011 WL 830623, at *8 (noting that “the Parity Act does not require that insurers cover residential treatment, and does not require coverage for all ‘medically necessary health care service’”; rather, only the specific benefits enumerated under the Parity Act are required, as well as benefits voluntarily “provided under a given plan”; thus “if the plan at issue covers hospitalization for physical illness where medically necessary, it must cover hospitalization for mental illness where medically necessary”). I agree that this interpretation is a consistent interpretation of the Parity Act, because the services specifically required under the Parity Act and its implementing regulation are exhaustive, unless the insurer has voluntarily chosen to provide a non-mandated benefit for a physical condition.
However, our original opinion did not adopt this interpretation of the Parity Act’s text, given our reading of the Parity Act’s implementing regulation as referring to the Parity Act itself, rather than creating a ceiling for benefits to be provided. Specifically, we stated:
Blue Shield inserted the bracketed phrase “[Knox-Keene]” in its quotation of the regulation. Based on its assumption that the regulation refers to the Knox-Keene Act, Blue Shield argues that coverage under the Parity Act is intended to parallel coverage under the Knox-Keene Act. We believe that Blue Shield misreads the regulation. In our view, the “Act” to which the regulation refers is the Parity Act.... Without Blue Shield’s alteration, nothing in the text of the statute or the regulation suggests that the scope of the Parity Act is *723 equivalent to the scope of the KnoxKeene Act.
Harlick, 656 F.3d at 845.
We now unanimously agree with Blue Shield that “Knox-Keene” in fact does appropriately belong within the brackets. We cannot avoid this interpretation, because California’s Administrative Code requires that we interpret the word “Act” as a reference to the Knox-Keene Act.[1] CaLCode Regs. tit. 28, § 1400.45(a). Given this change, there is support for the interpretation of the Parity Act where “the scope of the Parity Act is equivalent to the scope of the Knox-Keene Act.” Harlick, 656 F.3d at 845. Accordingly, this change in interpretation should also change our conclusion as to what benefits insurers are required to provide under the Parity Act.
Nevertheless, the majority rejects this obvious interpretation of the statutory text based on its interpretation of “including but not limited to” language in the implementation regulation, which reads as follows:
The mental health services required for the diagnosis, and treatment of conditions set forth in Health and Safety Code section 1374.72 [the Parity Act] shall include, when medically necessary, all health care services required under the Act including, but not limited to, basic health care services within the meaning of Health and Safety Code sections 1345(b) and 1367(i), and section 1300.67 of Title 28.
CaLCode Regs. tit. 28, § 1300.74.72(a) (emphasis added). Based on this language alone, the majority argues that the “regulation suggests] that the list of benefits in subsection (b) of the Act, as well as the ‘basic health care services’ specified in the regulation, are illustrative rather than exhaustive.” Revised Maj. Op. 712-13. However, this reading of the regulation ignores the text surrounding the “including, but not limited to” language and also ignores fundamental canons of statutory interpretation.
The text of the Parity Act’s implementing regulation suggests that the first portion of subsection (a) (“services required ... shall include, when medically necessary, all health care services”) is being modified by the second portion of subsection (a) (“required under the [KnoxKeene] Act....”). Thus, the second portion of the text limits the scope of the “health care services” that must be provided to the types of benefits provided under the Knox-Keene Act. It is undisputed that the Knox-Keene Act does not require all medically necessary treatment for physical illnesses. See Kaiser Fdtn. Health Plan, *724 Inc. v. Zingale, 99 Cal.App.4th 1018, 121 Cal.Rptr.2d 741, 745 (2002) (“If the Legislature had intended to require every health care service plan that offers a prescription drug benefit to cover all medically necessary prescription drugs or to allow the Department to impose that requirement, it would have been simple for the Legislature to say so.”). Thus, viewed in this light, the “when medically necessary” language operates as a necessary (rather than sufficient) condition on the type of benefits that must be provided. In other words, plans must provide the type of benefits the Knox-Keene Act provides when they are medically necessary for mental health.
The majority’s current interpretation of the regulation reads out the modifying text: that the benefits must be provided when “required under the [Knox-Keene] Act....” Such a reading contradicts California’s longstanding rule against interpreting portions of statutory or regulatory text to be superfluous. See Wells v. 0ne2One Learning Found., 39 Cal.4th 1164, 48 Cal.Rptr.3d 108, 141 P.3d 225, 248 (2006) (“[interpretations which render any part of a statute superfluous are to be avoided.”).
The “including, but not limited to,” language (on which the majority relies) does not contradict this interpretation of the Parity Act. California courts have explained that, while the phrase “including, but not limited to” is admittedly a “phrase of enlargement,” this phrase is “not a grant of carte blanche that permits all actions without restriction,” and it cannot be used to create an “unreasonable expansion of the legislature’s words.... ” Wainwright v. Superior Court, 84 Cal.App.4th 262, 100 Cal.Rptr.2d 749, 752-53 (2000); see also People v. Giordano, 42 Cal.4th 644, 68 Cal.Rptr.3d 51, 170 P.3d 623, 634 (2007) (“Although the phrase ‘including, but not limited to’ is a phrase of enlargement, the use of this phrase does not conclusively demonstrate that the Legislature intended a category to be without limits.” (internal quotation marks omitted)). Thus, the context surrounding the “including, but not limited to” phrase cannot be ignored when determining the extent of the “enlarging” effect this phrase has on benefits that § 1300.74.72(a) requires insurance companies to provide.
In multiple cases, the California Supreme Court has explained that the “including, but not limited to” phrase must be given a narrow interpretation when it precedes a list of illustrative items that have a similar characteristic. For example, in People v. Arias, 45 Cal.4th 169, 85 Cal. Rptr.3d 1, 195 P.3d 103, 109-10 (2008), the California Supreme Court applied the ejusdem genens cannon of statutory interpretation (meaning “of the same kind”), to reject a broad interpretation of the “including, but not limited to” proviso. The California Supreme Court explained that when “specific words follow general words in a statute or vice versa ... the general term or category is restricted to those things that are similar to those which are enumerated specifically.” Id., 85 Cal. Rptr.3d 1, 195 P.3d at 109 (internal quotation marks omitted). The court explained that, to interpret the “including, but not limited to” phrase to allow items beyond that type, would “render nugatory the qualifiers that the Legislature purposefully included in that example.” Id.,Id., 85 Cal. Rptr.3d 1, 195 P.3d at 110.
California has other similar cases utilizing the ejusdem generis cannon to interpret an “including, but not limited to” statutory phrase in a similar limited fashion. See, e.g., Kraus v. Trinity Mgmt. Servs., Inc., 23 Cal.4th 116, 96 Cal.Rptr.2d 485, 999 P.2d 718, 734 (2000) (limiting the “including, but not limited to” phrase when *725 the legislature “offer[s] as examples peculiar things or classes of things”), superseded on other grounds by statute as recognized in Arias v. Superior Court, 46 Cal.4th 969, 95 Cal.Rptr.3d 588, 209 P.3d 923 (2009); Peralta Comty. Coll. Dist. v. Fair Emp’t & Hous. Comm’n, 52 Cal.3d 40, 276 Cal.Rptr. 114, 801 P.2d 357, 360, 363, 367 (1990) (a statute authorizing commission to take “such action” as it believes will effectuate the purposes of the Fair Employment and Housing Act, “including, but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay, and restoration to membership in any respondent labor organization,” does not authorize commission to award compensatory damages, because that was not “of the same general nature or class as those enumerated”); Dyna-Med, Inc. v. Fair Emp’t & Hous. Comm’n, 43 Cal.3d 1379, 241 Cal.Rptr. 67, 743 P.2d 1323, 1327, 1329 (1987) (holding that the statute did not extend to cover remedies that were “different in kind from the enumerated remedies,” because “[a] more reasonable reading of the phrase ‘including, but not limited to,’ ... permitting only additional corrective remedies comports with the statutory construction doctrines of ejusdem generis, expressio unius est exclusio alterius and noscitur a sociis.”).
The Parity Act’s implementing regulation contains a similar situation, where the “including, but not limited to” phrase is followed by a reference to a general term (“basic health care services within the meaning of”) and then a list of three statutory or regulatory provisions enumerating health services. See Cal.Code Regs, tit. 28, § 1300.74.72(a) (emphasis added). The first two provisions (California Health and Safety Code §§ 1345(b) and 1367(i)) are from the Knox-Keene Act itself, and the second provision (§ 1300.67 of Title 28 of the California Code of Regulations) is a regulation promulgated under the authority of the Knox-Keene Act. Thus, following California’s use of the ejusdem generis cannon of statutory construction, the illustrative health care services listed are services mandated by the Knox-Keene Act, which suggests that other non-listed services would similarly be of the type required under the Knox-Keene Act. A narrow interpretation of the implementing regulation comporting with ejusdem generis mandates only one conclusion: any other services offered beyond what the KnoxKeene Act requires should be interpreted narrowly, and would likely only include those services specifically mandated by the Parity Act or in parity with physical health benefits that have voluntarily been provided by the insurer.
California case law does not support the majority’s textual interpretation. The original and revised opinion rely on Arce, 104 Cal.Rptr.3d 545 (2010), arguing that although Arce did not explicitly touch on this issue, “the court’s analysis appears to assume” that the Act requires “all medically necessary treatment....” Revised Maj. Op. 716. While this is not an unreasonable interpretation of Arce, the Arce holding also appears to be equally consistent with the interpretation of the Parity Act which is mandated by its language (as explained above).
The issue in Arce was whether the insurance company had engaged in unlawful conduct by “denying coverage for the diagnosis and treatment of autism spectrum disorders under the same terms and conditions applied to other medical conditions.” Arce, 104 Cal.Rptr.3d at 565 (emphasis added). The insurance company was arguing that a violation of the Parity Act could only occur if it was demonstrated that the “therapies at issue were medically necessary for the putative class.... ” Id. But the court held that a violation could also be shown if the insurance com *726 pany “categorically denie[d] coverage for mental health care services that may, in some circumstances, be medically necessary. ...” Id. However, this analysis was focused on a denial of mental health services that led to an unequal provision of coverage compared to physical illnesses, and thus it says nothing of requiring all medically necessary benefits regardless of the physical benefits provided.
Finally, under California law, when a statute requiring the provision of insurance benefits is ambiguous, the statute is not necessarily construed in favor of the insured. Rather, “the statute must be construed to implement the intent of the Legislature and should not be construed strictly against the insurer (unlike ambiguous or uncertain policy language).” Prudential-LMI Commercial Ins. v. Superior Court, 51 Cal.3d 674, 274 Cal.Rptr. 387, 798 P.2d 1230, 1236 (1990) (citing Interinsurance Exch. v. Marquez, 116 Cal.App.3d 652, 172 Cal.Rptr. 263, 264 (1981)); see also Ichthys Inc. v. Guarantee Ins. Co., 249 Cal.App.2d 555, 57 Cal.Rptr. 734, 737 (1967); Zaragoza v. Ibarra, 174 Cal.App.4th 1012, 95 Cal.Rptr.3d 264, 270 (2009).
The purpose of the Parity Act supports an interpretation of the statute requiring only that mental health coverage provided be linked to the physical health coverage provided under the Knox-Keene Act. As discussed above, the Parity Act was enacted in 1999 to address the perceived problem that private health insurance policies provided coverage for mental illness at levels far below coverage for other physical illnesses. See 1999 Cal. Stat. 3701. This problem would not be rectified by requiring insurance policies to provide more mental health coverage than physical health coverage. Further, the word “parity” itself means “[e]quality, as in amount, status, or value.” The American Heritage College Dictionary 993 (3d ed. 1997). Therefore, the rationale (and even the name of the Parity Act) indicates that the legislature’s goal was to ensure parity in the scope of coverage for services that plans must offer for physical and mental illness.
II. The Conflicting Legislative History
Because the Parity Act’s statutory and regulatory text no longer supports the majority’s interpretation, the majority now relies primarily on legislative history to justify its holding. But legislative history, often an elusive tool of interpretation, is particularly elusive here. Thus, relying on legislative history here results in the proverbial situation where the majority is “looking over a crowd and picking out its friends.” People v. Seneca Ins. Co., 29 Cal.4th 954, 129 Cal.Rptr.2d 842, 62 P.3d 81, 86 (2003) (quoting Patricia M. Wald, Some Observations on the Use of Legislative History in the 1981 Supreme Court Term, 68 Iowa L.Rev. 195, 214 (1983)).
For example, the majority opinion focuses on the various positions the California Department of Managed Health Care (“DMHC”) has taken with regard to the implementation regulation. Revised Maj. Op. 716-18. But there are multiple ways to interpret the inconsistent stances of the DMHC. The revised majority opinion explains that “[d]uring the notiee-and-comment process leading up to the promulgation of § 1300.74.72, Blue Shield made the same argument about the mandated coverage of the Parity Act that it now makes to us. The DMHC unambiguously rejected Blue Shield’s argument.” Revised Maj. Op. 714. However, it is far from clear that the DMHC’s response rejected Blue Shield’s argument for the same reason the majority does.
The record shows that, when Blue Shield expressed concern that the regula *727 tion might be read to require coverage for all medically necessary care, the DMHC rejected the comment. However, the DMHC rejected the comment, not because it disagreed with Blue Shield, but because the DMHC viewed the regulation as already clearly stating what Blue Shield was requesting. “Given that the statute requires parity in coverage, the commentator’s concern is without merit; the regulation requires only that health plans provide mental health coverage in parity with what the plan provides for other medical conditions. The draft regulation language makes clear that plans cannot limit mental health coverage to anything less than what is medically necessary and on parity with other health care provided by the plan.” DMHC Mental Health Parity, Responses to Comments, 1st Comment Period, 8/16— 9/30/2002, at 1 (emphasis added). Notably, the DMHC’s response was not that mental health coverage must be provided regardless of whether it was medically necessary or on parity with other health care provided by the plan. Thus, medical necessity was not demonstrated as an independent basis for receiving coverage, and the DMHC viewed Blue Shield’s concern as “without merit.”
Furthermore, when DMHC responded to another commentator by stating that “it is sufficient to state that the plans must provide all medically necessary services,” DMHC was responding to a commentator’s suggestion that “a list of sendees specific to mental health” be developed so that all sendees needed “to provide full parity coverage ” would be available. Id. at 2 (emphasis added). The commentator was arguably asking for a list of mental health benefits to be provided in parity, or equal measure, to physical health coverage. The commentator was clearly not asking for coverage of all medically necessary mental health benefits without limit.
In addition, the majority opinion dismisses the DMHC’s “Mental Health Parity in California Survey” (the “Survey”),[2] because the “study was not — and was not designed to be — an enforcement proceeding.” Revised Maj. Op. 718. While that is true, this does not necessarily preclude the Survey from providing support for Blue Shield’s argument.
The Survey was implemented as part of the DMHC’s authority to regulate and monitor managed health plans in response to questions by' legislators and consumers about “whether parity between medical and mental health care had been achieved.” The Survey results “did not identify disparities between the contractual terms and conditions used for medical versus mental health coverage, as disclosed in the Evidence of Coverage (“EOC”). Further, the Survey found no pattern of plans denying services for mental health conditions that would be covered for other medical conditions.” Based on its findings, the DMHC immediately required the plans to take corrective action on several issues — none of which related to the types of services provided or to residential care. Moreover, the Survey discussed the plans’ use of residential care at some length. It noted that often only part of the residential care is covered; that “plans offer a choice of benefit packages both with and without RTC benefits”; that of the seven insurers, four plans offered RTC coverage as an optional benefit, and only one covered it on equal terms with skilled nursing facilities.
The Survey specifically considered the EOC documents from the health plans and found no violation of the Parity Act. The Survey made this finding, despite Blue *728 Shield’s plan[3] which allowed treatment in a SNF, but expressly excluded residential care.
The majority opinion also diminishes the importance of DMHC’s response to a letter written by Robin Watson (Harlick’s mother), by categorizing it as a request for an Independent Medical Review (“IMR”). Revised Maj. Op. 718. In this letter, DMHC Senior Counsel Andrew George explained that “Blue Shield is not obligated to provide coverage for [Harlick’s] treatment.” However, neither Watson’s letter nor the letters from the DMHC indicate that Watson’s letter was either a request for an IMR (it never mentioned medical necessity) or was treated as such. Even if an IMR is limited to considerations of medical necessity, that limitation may be inapplicable. See Cal. Health & Safety Code § 1374.30(b). Instead, the DMHC help center referred to it as a complaint. Aside from an IMR, “[a]ll other enrollee grievances, including grievances involving coverage decisions, remain eligible for review by the department pursuant to subdivision (b) of Section 1368.” Cal. Health & Safety Code § 1374.30(d)(1). According to the DMHC’s website, even a request for an IMR, if inappropriate, will be handled as a grievance. Department of Managed Health Care, “Questions and Answers about IMR” http://www.dmhc.ca. gov/dmhc_consumer/pc/pc_imrqa.aspx (last visited May 3, 2012) (explaining that if a problem does not qualify as an IMR, “the Help Center will review your case through its regular complaint process and send you a written decision within 30 days”).
Section 1368 provides that, after an enrollee has completed the plan’s grievance process, she may “submit the grievance to the department for review.” Cal. Health & Safety Code § 1368(b)(1)(A); As here, the department “shall review the written documents submitted with the subscriber’s or the enrollee’s request for review” and “may ask for additional information.” Id. § 1368(b)(3). The department will then “send a written notice of the final disposition of the grievance, and the reasons therefor, to the subscriber,” which will include “[a] summary of its findings and the reasons why the department found the plan to be, or not to be, in compliance with any applicable laws, regulations, or orders of the director.” Id. § 1368(b)(5).
It is true that George’s response to Watson’s complaint did not explicitly address whether Blue Shield’s denial complied with the Parity Act. However, Watson’s letter to the DMHC specifically alleged that “Jeanene is protected by the CA Parity Law and the insurance company is not paying the claims.” After reviewing the information submitted, the DMHC concluded that “Blue Shield has complied with its responsibilities under applicable health plan law regarding your request.” It did not limit this conclusion to any particular law, and it is likely that George considered the Parity Act in his analysis. George was also one of the contributors to the Survey.[4]
III. Conclusion
As discussed above, the Knox-Keene Act does not require all medically necessary treatment for physical illnesses. See Kaiser, 121 Cal.Rptr.2d at 745. Thus, to *729 keep in parity with those benefits, it makes sense that the Parity Act would also not offer them. Therefore, I must dissent because (1) the statutory and regulatory text most clearly support a statutory interpretation linking the scope of coverage provided under the Parity ■ Act to the KnoxKeene Act, and (2) the statute’s purpose and legislative history provide equal (if not more) support to this interpretation, rather than the majority’s interpretation.

. See also Arce v. Kaiser Found. Health Plan, Inc., 181 Cal.App.4th 471, 104 Cal.Rptr.3d 545, 564 (2010) (inserting 'Knox-Keene' in brackets when quoting § 1300.74.72(a)). Though this definition section was enacted before the Parity Act's implementing regulation, California law follows "a presumption that the Legislature is aware of an administrative construction of a statute,” and this presumption "should be applied if the agency’s interpretation of the statutory provisions is of such longstanding duration that the Legislature may be presumed to know of it.” Redevelopment Agency of the City of Long Beach v. Cnty. of L.A., 75 Cal.App.4th 68, 89 Cal. Rptr.2d 10, 17 n. 5 (1999) (quoting Moore v. Cal., 2 Cal.4th 999, 9 Cal.Rptr.2d 358, 831 P.2d 798, 809 (1992)). An "administrative construction of a statute over many years, particularly when it originated with those charged with putting the statutory machinery into effect and enforcing it, is entitled to great weight and will be followed unless clearly erroneous.'' Robinson v. Fair Emp’t & Hous. Comm'n, 2 Cal.4th 226, 5 Cal.Rptr.2d 782, 785, 825 P.2d 767, 770 (1987) (internal quotation marks omitted); see also Misasi v. Jacobsen, 55 Cal.2d 303, 10 Cal.Rptr. 850, 359 P.2d 282, 284 (1961) ("[C]ourts will generally not depart from such an [administrative] interpretation unless it is clearly erroneous.”).

. The Survey began in 2004 and provided results in 2005.

. Harlick has not challenged Blue Shield's assertion that it was included in the Survey, even though the Survey does not list the plans considered.

. As a contributor, it is not likely that George was either (1) unfamiliar with the parity law that Watson challenged or (2) unfamiliar with the Survey's earlier conclusion that excluding residential treatment did not violate the parity law. His conclusion that Blue Shield complied with the law thus may indicate support for Blue Shield's interpretation.