[No. A091785. First Dist., Div. One. Oct. 20, 2000.]

PETER WAINWRIGHT, Petitioner, v.
THE SUPERIOR COURT OF HUMBOLDT COUNTY, Respondent;
NANCY SINKLER, Real Party in Interest.

## Counsel

Elaine Profant-Turner for Petitioner.

No appearance for Respondent.

Judith L. Edson for Real Party in Interest.

## Opinion

**STRANKMAN, P. J.**—In this writ of mandate proceeding, we must determine whether Family Code section 3011, subdivision (d) authorizes a family law court to compel a parent to submit to drug testing in a child custody proceeding. We conclude that the Family Code provision, devoid of any substantive or procedural safeguards, does not authorize court-ordered drug testing.[1]

### Facts

Peter Wainwright (Father) and Nancy Sinkler (Mother) have a son, Jacob, born in March 1994. Father and Mother were never married. According to Mother, the parties' relationship ended in December 1994. The original state of child custody and visitation is unclear from the record. In February 1999, Father filed a complaint to establish a parental relationship and requested joint legal and physical custody. Mother acknowledged Father's right to visitation but requested sole legal and physical custody. Mother made various allegations that Father was an unfit parent, including claims that Father had grown marijuana in early 1995 and had been convicted of possessing a large quantity of marijuana sometime before 1995. Mother also asserted that Jacob had returned from visits with Father in 1997 smelling of marijuana and talking about watering plants on Father's farm. Father denied Mother's allegations.

The parties were sent to mediation and, in May 1999, stipulated to joint legal and physical custody but agreed to reevaluate the custody arrangement in April 2000. Included within the terms of the custody arrangement was the

---

[1]All further statutory references are to the Family Code, except as noted.

parties' agreement "not to use alcohol or illicit drugs 24 hours prior to and during that parent's periods of responsibility for the child." The custody matter was continued until April 11, 2000, for review. At the review hearing, Father requested that the custodial arrangement remain unchanged but Mother requested a change, the exact nature of which does not appear in the record. The parties were again sent to mediation but the parties failed to reach agreement. The court set a contested hearing on custody for August 3, 2000, with a pretrial hearing scheduled for June 8, 2000.

At the pretrial hearing, Mother orally requested drug testing of Father, and Father objected. The court continued hearing on the issue of drug testing to permit briefing. In advance of the hearing, Mother filed a brief in which she asserted that drug testing was authorized by the Family Code's provision that the court shall consider a parent's "habitual or continual illegal use of controlled substances" in awarding child custody. (§ 3011, subd. (d).) Mother submitted a declaration supporting her request for drug testing in which she declared that Father used marijuana and "other illegal drugs" when they lived together, which was almost six years earlier. Mother further declared that, within the past year, Jacob had once returned home from a visit with Father with marijuana on the bottom of the child's socks. Also within the past year, Jacob spontaneously told Mother, while watching an antismoking advertisement on television: "My Dad doesn't smoke cigarettes. He smokes those hard, little, green herb things." Jacob proceeded to say: "It's O.K., his doctor said he could." Mother declared that she raised the issue with Father in the May 2000 mediation, and Father said "that he does smoke marijuana, but in the garage, that Jacob comes into the garage sometimes, and that [Father] then tells [Jacob] to leave the garage."

Father filed written opposition to drug testing. Father objected to Mother's recitation of confidential statements from mediation, and asserted that drug testing violated his right to privacy. (§ 3177.) Father also argued that marijuana use "is not per se illegal" in California.

The court heard the matter on June 20, 2000, and ordered Father to submit to drug testing. The court found that section 3011, subdivision (d) authorizes drug tests, and that the interests of a child outweigh the privacy interests of a parent suspected of drug use. The court ordered a hair drug analysis of Father within 48 hours, with Mother to pay the cost of the test. The court's written order, filed on July 3, 2000, further specified that the test results shall be delivered to the court investigator and filed as a confidential document, with counsel for each party receiving a copy. The trial court had suggested, in earlier proceedings, that Father's noncompliance with ordered drug testing could be grounds for contempt, or considered by the court in awarding custody.

On July 14, 2000, Father filed a petition in this court for a writ of mandate or prohibition vacating the trial court's order for drug testing. Mother, as the real party in interest, opposed the petition. On July 27, 2000, we stayed drug testing and issued an alternative writ directing the trial court to vacate its drug testing order or to show cause why it had not done so. We indicated that the petition would be dismissed as moot if the trial court vacated its order. The trial court held further proceedings on August 10, 2000, and decided not to rescind its drug testing order. Mother filed her return on August 23, 2000.

## DISCUSSION

Does section 3011, subdivision (d) authorize a family law court to compel a parent to submit to drug testing in a child custody proceeding? We answer in the negative. Nothing in the words, purpose, or legislative history of section 3011, subdivision (d) authorizes court-ordered drug testing unchecked by substantive and procedural guidelines.[2]

Section 3011, subdivision (d), directs a court adjudicating child custody to consider certain factors in determining the best interest of the child, including "[t]he habitual or continual illegal use of controlled substances or habitual or continual abuse of alcohol by either parent. Before considering these allegations, the court may first require independent corroboration, including, but not limited to, written reports from law enforcement agencies, courts, probation departments, social welfare agencies, medical facilities, rehabilitation facilities, or other public agencies or nonprofit organizations providing drug and alcohol abuse services."

The provision, in its plainest sense, protects a parent accused of drug abuse by authorizing a family court to require the accuser to present corroboration before the court credits the accusations. The family court here read the provision as authorization for it to actively investigate Mother's accusations of drug abuse and to order Father to submit to drug testing to produce corroborative evidence against himself. The court misconstrued the statute.

A family court's power to require "independent corroboration" before considering allegations of a parent's drug or alcohol abuse does not authorize the court to order drug testing. (§ 3011, subd. (d).) Admittedly, the

---

[2]We are concerned solely with section 3011, subdivision (d). Under general discovery procedures, a court may order a physical examination, on noticed motion and for good cause shown, where a party's physical condition "is in controversy in the action." (Code Civ. Proc., § 2032, subds. (a), (d).) It is far from clear that Mother's unsubstantiated allegations of drug use put Father's medical condition in controversy, and Mother never made any effort to satisfy this standard nor the other prerequisites for ordering examinations under the discovery provision. (See generally *Vinson v. Superior Court* (1987) 43 Cal.3d 833, 838-844 [239 Cal.Rptr. 292, 740 P.2d 404] [discussing limitations on court-ordered mental examinations].)

statutory phrase " 'including but not limited to' is a phrase of enlargement." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1389 [241 Cal.Rptr. 67, 743 P.2d 1323].) It is plain that the Legislature did not intend to restrict the sources of independent corroboration to the specified written reports of public agencies and nonprofit organizations. Nevertheless, the statutory phrase " 'including but not limited to' " is not a grant of carte blanche that permits all actions without restriction. (*Ibid.*) Given the significant public policy and constitutional issues raised by court-compelled drug testing, we think it an unreasonable expansion of the Legislature's words to infer that the Legislature meant to include drug testing as a means of corroboration.

■ " '[A] court, when faced with an ambiguous statute that raises serious constitutional questions, should endeavor to construe the statute in a manner which *avoids* any doubt concerning its validity.' " (*Young v. Haines* (1986) 41 Cal.3d 883, 898 [226 Cal.Rptr. 547, 718 P.2d 909].) "The court's duty in interpreting a statute is not limited to avoiding a construction which makes it clearly unconstitutional. It goes further: if possible, the statute must be construed so that the 'constitutional difficulties' will never arise." (*Kortum v. Alkire* (1977) 69 Cal.App.3d 325, 333-334 [138 Cal.Rptr. 26].)

■ Interpreting section 3011, subdivision (d) to permit court-compelled drug testing in child custody disputes would present serious constitutional concerns. Governmentally compelled drug testing implicates the federal and state right to be free of unreasonable searches and seizures, and the state right of privacy. (U.S. Const., 4th Amend.; Cal. Const., art. I, §§ 1, 13; *Loder v. City of Glendale* (1997) 14 Cal.4th 846, 876, 896 [59 Cal.Rptr.2d 696, 927 P.2d 1200].) ■ Whether a particular drug-testing practice constitutes an unreasonable search or invasion of privacy rests on a complex array of factors. The reasonableness of a particular search " 'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.' " (*Skinner v. Railway Labor Executives' Ass'n* (1989) 489 U.S. 602, 619 [109 S.Ct. 1402, 1414, 103 L.Ed.2d 639].) A search is generally unreasonable "unless it is accomplished pursuant to a judicial warrant issued upon probable cause." (*Ibid.*) A warrant and probable cause are not required " 'when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." ' " (*Ibid.*) Such "special needs" have permitted suspicionless searches and seizures for conducting drug testing of railroad personnel involved in train accidents, federal customs officers who carry firearms or are involved in drug interdiction, and student athletes. (*Id.* at pp. 619-634 [109 S.Ct. at pp. 1414-1422]; *Treasury Employees v. Von Raab* (1989) 489 U.S. 656 [109 S.Ct. 1384, 103 L.Ed.2d 685]; *Vernonia*

*School Dist. 47J v. Acton* (1995) 515 U.S. 646 [115 S.Ct. 2386, 132 L.Ed.2d 564].) The United States Supreme Court has never sanctioned drug testing without first subjecting the drug-testing practice to a close assessment of the individual's legitimate expectation of privacy, the character of the intrusion, the nature and immediacy of the governmental concern at issue, and the efficacy of drug testing in meeting the governmental concern. (E.g., *Vernonia School Dist. 47J, supra,* at pp. 654, 659, 660 [115 S.Ct. at pp. 2391, 2393].) Similarly, the California Supreme Court has approved drug testing of student athletes and city job applicants, but only after a careful weighing of the individual's privacy interests, the degree of intrusion, and the justification for drug testing. (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 39-40 [26 Cal.Rptr.2d 834, 865 P.2d 633]; *Loder v. City of Glendale, supra,* 14 Cal.4th at pp. 881-898.)

▆ Interpreting section 3011, subdivision (d) to permit drug testing in child custody disputes would create serious constitutional difficulties, given the provision's lack of any substantive or procedural guidelines. The provision would permit parental drug testing upon a bare allegation of drug use and without any statutory limitations on the type of test (blood, urine or hair), the manner of administering the test, or the disclosure of test results. Commendably, the court here ordered the test results to remain confidential. But section 3011, subdivision (d) does not mandate confidentiality, nor any other procedures to achieve a proper balance between a parent's privacy interests, the degree of intrusion, and the state's interest in protecting child welfare.[3] We will not construe a statute in a manner that creates doubts as to its constitutional validity. (*Young v. Haines, supra,* 41 Cal.3d at p. 898.)

Moreover, the legislative history of section 3011, subdivision (d) fails to support the claim that the Legislature intended to authorize drug testing in child custody cases when it empowered family courts to demand "independent corroboration" before considering allegations of a parent's drug abuse. The provision was enacted in 1996, as an amendment to section 3011's list of factors to be considered by a court in determining the best interest of a child in family law matters. (Stats. 1996, ch. 835, § 1 (Assem. Bill No. 2474), ch. 836, § 1.5 (Sen. Bill No. 384).) The Legislature was concerned that existing law did not "specifically recognize the inherent dangers to

---

[3]At oral argument Mother stressed the significance of the state's public policy that the determination of the best interest of the child is the primary goal in custody proceedings under the Family Code. (See § 3020.) But the existence of an important governmental interest does not automatically justify drug testing or end any inquiry into its constitutionality. Instead, the nature and strength of that interest is simply one factor in the balancing equation. (See *Loder v. City of Glendale, supra,* 14 Cal.4th at pp. 875-876.) We leave for another day whether court-ordered testing pursuant to more stringent procedural safeguards might pass constitutional muster.

children due to the habitual or continual illegal use of controlled substances and/or alcohol. This bill seeks to recognize substance abusing homes as a threat to the health, safety, and welfare of children and to provide the court with the means to protect the best interests of children." (Sen. Rules Com., Off. of Sen. Floor Analyses, Sen. Bill No. 384 (1995-1996 Reg. Sess.) as amended Aug. 20, 1996.) The primary issue for the Legislature was whether a family court hearing allegations of parental drug or alcohol abuse should be required, or simply permitted, to demand independent corroboration before considering the allegations. (See Sen. Bill No. 384, introduced Feb. 14, 1995 [the court "shall first require independent corroboration" before considering substance abuse allegations]; Sen. Amend. to Sen. Bill No. 384 (1995-1996 Reg. Sess.) Jan. 23, 1996 [the court "may require independent corroboration" before considering substance abuse allegations].) Importantly, the Legislative record contains no mention of court-ordered drug testing as a means of independent corroboration. It is unlikely in the extreme that a controversial measure like compelled drug testing would pass unremarked through the state Senate and Assembly and be enacted into law sub silentio.

We conclude that the general language of section 3011, subdivision (d), empowering family courts to demand "independent corroboration" before considering allegations of a parent's drug abuse, does not authorize court-ordered drug testing.[4]

### DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its order compelling petitioner to submit to drug testing. Our stay previously entered shall remain in effect pending issuance of the remittitur. Petitioner is entitled to costs.

Stein, J., and Marchiano, J., concurred.

---

[4]We are not concerned in this case with random drug testing of a parent ordered as a condition of a family reunification plan in a dependency proceeding under Welfare and Institutions Code section 300 and following. The court's authority to issue an order for drug testing in such cases derives from its broad statutory power to address parental deficiencies in a reunification plan. (See Welf. & Inst. Code, §§ 361.5, subd. (a), 362, subd. (c); *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006-1007 [57 Cal.Rptr.2d 861].)