**IN THE COURT OF APPEALS OF IOWA**

No. 14-0592
Filed July 16, 2014

**IN THE INTEREST OF A.C. AND A.J.,**
**Minor Children,**

**J.C., Father,**
**Appellant.**

_____

Appeal from the Iowa District Court for Floyd County, Karen R. Salic, District Associate Judge.

A father appeals adjudicatory and dispositional orders in a child-in-need-of-assistance action. **AFFIRMED.**

David A. Kuehner of Eggert, Erb, Mulcahy & Kuehner, P.L.L.C., Charles City, for appellant father.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, and Normand Klemesrud, County Attorney, for appellee State.

Cynthia Schuknecht of Noah, Smith & Schuknecht, Charles City, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**VAITHESWARAN, P.J.**

A father appeals adjudicatory and dispositional orders in a child-in-need-of-assistance action. He contends (1) the district court "erred in admitting evidence related to [an] ex parte order for drug testing and other evidence derived from that order" and (2) his trial attorney was ineffective in "failing to object to questioning of a witness by the court."

**I.    *Background Facts and Proceedings***

A mother and father shared "50/50 custody" of their two children, born in 2006 and 2007. In 2013, the Iowa Department of Human Services received a complaint that the children's father was seen in his home with drugs. The department employee in charge of investigating the complaint interviewed the father, who denied using drugs "at this time" but refused to volunteer for a drug test.

The investigator obtained an ex parte court order requiring the father to undergo drug testing. After receipt of the drug test result and receipt of information that the father acted out in front of the mother's home, the department issued a "founded" child protection service assessment report concluding the father denied the children critical care and failed to supervise them properly.

The father underwent a substance abuse evaluation and appeared to meet the diagnostic criteria for amphetamine, cannabis, and alcohol abuse. It was recommended that he begin extended outpatient treatment services. The father began services as scheduled, with the focus on drug screening options. A drug patch was applied but, several days later, a service provider determined the

patch had been "compromised" and could not be sent in for testing. A second drug patch also could not be sent in for testing because the father was unavailable to have it removed. The father declined a third drug patch and refused therapeutic services. He was "discharged due to a lack of readiness to resolve his problems." Meanwhile, he agreed to have only supervised contact with the children.

After affording the father approximately five months to address his drug addictions, the State filed a petition alleging the children to be in need of assistance. At an adjudicatory hearing, the State offered several documents including the "founded" child protection service assessment report. The father's attorney objected to the admission of this report, asserting,

> [T]he report contains reference to a drug test that was conducted pursuant to a court order, and it is our position that that court order was done with no—there was no statutory authority for that court order, and a drug test does—does bring into play the Fourth Amendment, and I don't think there was any—in addition to no statutory authority for it, I think that the court order also violates my client's rights under the Fourth Amendment to be free from unreasonable search and seizure, and a drug test clearly is at the heart of his protected interests.

The court overruled the father's objection and admitted the exhibit. Following the hearing, the court concluded

> the children are in need of assistance . . . based on their father's drug use and based on the testimony that's a long-standing issue and would have resulted—because of the nature of that drug and the frequency of use that the children would have been in a situation which they were not receiving appropriate supervision or care.

The court ordered the father to resume substance abuse treatment and submit to drug testing, and the children to continue in the mother's custody "with visitation

with [the father], supervised or unsupervised at the discretion of the Department."
At a subsequent dispositional hearing, the court maintained the status quo. The
father appealed.

**II.     Analysis**

**A.      Admission of Drug Test Result**

As noted, the father contends the court should not have admitted evidence
relating to the ex parte order for drug testing or any evidence derived from the
order. The State responds with an error preservation concern. In its view, the
father "had the obligation to resist the drug testing order" when it was entered
"and, if unsuccessful, to seek appellate relief from it." While that was certainly a
route the father could have taken,[1] his failure to appeal the order does not
foreclose our review of his timely objection to the report and the court's ruling on
the objection, which reaffirmed the reasoning of the ex parte order. Error
preservation is not a concern and we proceed to the court's ruling on the
objection.

Iowa Code section 232.96(6) (2013) governs the admissibility of
department reports, including child protective assessment reports. It states:

> A report . . . made by the department of human services . . .
> relating to a child in a proceeding under this division is admissible
> notwithstanding any objection to hearsay statements contained in it
> provided it is relevant and material and provided its probative value
> substantially outweighs the danger of unfair prejudice to the child's
> parent, guardian, or custodian. The circumstances of the making of
> the report, study, record or other writing or an audiotape or

---

[1] We find it unnecessary to decide whether that order was appealable or subject to
discretionary review. *See In re C.S.,* 516 N.W.2d 851, 857 (Iowa 1994) (stating "[a]
juvenile court decision is not final unless it disposes of all the issues").

> videotape recording, including the maker's lack of personal knowledge, may be proved to affect its weight.

*See also* Iowa Code § 232.96(4) (stating "[a] report made to the department of human services pursuant to chapter 235A [Child Abuse] shall be admissible in evidence, but such a report shall not alone be sufficient to support a finding that the child is a child in need of assistance unless the attorneys for the child and the parents consent to such a finding").

In admitting the report, the court cited its authority to provide for "the safety of the children without the trauma of removal if that can be done." We have no quarrel with this laudable goal; the exhibit was clearly relevant and material to the question of the children's safety, a paramount consideration in a child-in-need of assistance action. *See id.* § 232.116(2); *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). That said, we are not convinced the probative value of the exhibit substantially outweighed the danger of unfair prejudice to the father. Iowa Code § 232.96(6). The exhibit and, in particular, the exhibit's reference to the drug test result obtained pursuant to an ex parte pre-adjudication order, raised serious statutory concerns.

The only statutory authority the county attorney cited in support of ordering such a test was Iowa Code section 232.78, a provision that authorizes medical procedures to be performed on a child, not a parent. The county attorney was left to argue in favor of the court's "inherent authority" to issue such an order. The county attorney was correct in noting that a court may have inherent authority to act in a child's best interests. *See In re K.N.*, 625 N.W.2d 731, 735 (Iowa 2001) (noting the State's duty "as parents patriae, to ensure that the aims

of the juvenile justice code are applied to each child in need of the code's assistance"). However, that authority cannot be used "to circumvent the expressed legislative policies woven into the law." *Id.* at 734.

The legislature has specified precisely what the department can do on receipt of a child abuse complaint. *See* Iowa Code § 232.71B. Nothing in that provision authorizes a department employee to obtain an ex parte court order mandating parental drug testing for the purpose of confirming child abuse allegations. To the contrary, the provision only authorizes the department to furnish voluntary services to families and then only to families of "abused children," not families being investigated for abuse. *See id.* § 232.71B(13).

We recognize that a separate code provision, section 232.71C, allows the department to seek juvenile court action at any time during the assessment process if the department believes such action is necessary "to safeguard a child." *See id.* § 232.71C(1). This provision cannot be read as authorizing the department to seek a pre-adjudication, ex parte order for mandatory parental drug testing because another provision permits such testing only "[f]ollowing an adjudication that a child is a child in need of assistance" and only "after a hearing." *See id.* § 232.98(2).

In sum, we find no statutory authority to support the district court's ex parte pre-adjudication parental drug-testing order, nor do we find that the court had inherent authority to enter such an order.

What was inherent was the prejudice to the father. Because the original order was entered ex parte, the father had no opportunity to raise the absence of authority to support drug testing at this stage. While he could have refused to

comply with the order, he then would have faced immediate removal of the children. We conclude the probative value of those portions of the child protective assessment report making reference to the drug test and drug test result was substantially outweighed by the danger of unfair prejudice to the father. Those portions of the report should not have been admitted.[2] The remainder of the report, including the summaries of the investigator's interviews with the father and others and the department's opinions and conclusions were admissible. *See In re Long*, 313 N.W.2d 473, 480-81 (Iowa 1981).

Our resolution of the admissibility issue on statutory grounds makes it unnecessary to address the father's constitutional objection to the exhibit. *See In re S.P.*, 672 N.W.2d 842, 846 (Iowa 2003) (confining analysis to statutory law).[3]

---

[2] The existence of an objection and a ruling allows us to assess the probative value and prejudicial affect and determine the admissibility of the document. Alternately, we could affirm the admission of the entire exhibit and determine that the drug test result was entitled to no weight. *See* Iowa Code § 232.96(6) ("The circumstances of the making of the report, study, record or other writing or an audiotape or videotape recording, including the maker's lack of personal knowledge, may be proved to affect its weight."); *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2014) (noting that in absence of objection to exhibit it was still "fair for the court of appeals to comment on the limitations of the test report").

[3] The Fourth Amendment to the United States Constitution affords people a right to be free from unreasonable searches and seizures. *See Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013). "A court-ordered blood test [] is a search for Fourth Amendment purposes." *State v. Washington*, 832 N.W.2d 650, 658 (Iowa 2013) (citing *McNeely*, 133 S. Ct. at 1558). Several courts have weighed in on the constitutionality of mandatory drug testing orders under similar circumstances. *See Marchwinski v. Howard*, 113 F. Supp. 2d 1134, 1143 (E.D. Mich. 2000) (holding State failed to show special need grounded in public safety for suspicion-less drug testing of FIP recipients, establishing a strong likelihood of succeeding on the merits of their Fourth Amendment claim), *aff'd by* 60 Fed. Appx. 601 (6th Cir. 2003) (affirming on rehearing by evenly divided en banc panel); *Wainright v. Superior Court*, 100 Cal. Rptr. 2d 749, 753 (Cal App. 2000) (finding "serious constitutional difficulties" with reading statute that empowers family court to demand independent corroboration before considering allegations of a parent's drug abuse to authorize court-ordered drug testing); *State v. Jane Doe, II and John Doe, I*, 233 P.3d 1275, 1282 (Idaho 2010) (holding order requiring parents of juvenile to undergo drug testing as condition of juvenile's probation was "presumptively

Although portions of the exhibit were inadmissible, we need not reverse because our review is de novo and we are able to address the merits without resort to the objectionable testimony. *See In re Adkins*, 298 N.W.2d 273, 278 (Iowa 1980). Accordingly, we proceed to the question of whether there was clear and convincing evidence to support the adjudicatory and dispositional orders, a question that was not explicitly raised but that underlies the father's appeal. *In re L.G.*, 532 N.W.2d 478, 481 (Iowa Ct. App. 1995) ("The state has the burden to prove the allegations of the petition by clear and convincing evidence.").

The admissible portions of the child assessment report reveal that the father was coy about his drug use when interviewed by the department investigator. While he denied present drug use, he indicated that, if a drug test were taken, it might be positive for legitimate reasons. Later, in a meeting with the investigator, he opined that methamphetamine use while away from the children was not a safety issue. He also admitted to relapsing four months before the meeting.

In addition to indications of drug use independent of the drug test, the child assessment report made reference to an altercation outside the mother's home that scared the children. This alternate basis for adjudication was discussed by the court in its adjudicatory order.

---

invalid under the Fourth Amendment of the U.S. Constitution . . . absent a warrant"); *State v. Moreno*, 203 P.3d 1000, 1012 (Utah 2009) (holding order requiring parent of a delinquent juvenile to undergo drug testing absent probable cause to believe the parent was using drugs conflicted with the Fourth Amendment to the United States Constitution); *but see Luminella v. Marcocci*, 814 A.2d 711, 725 (Pa. 2002) (concluding order compelling mother to undergo drug testing in connection with child custody case was reasonable under the Fourth Amendment).

After the department issued its "founded" child protective assessment report but before the child in need of assistance petition was filed, the father agreed to participate in therapeutic services. As noted, he did not cooperate with the service provider and those services were curtailed.

At the adjudicatory hearing, the children's mother testified that she learned of the father's drug use five or six years before the hearing. The department became involved at that time. The mother opined that the father's drug use had essentially continued since then.[4]

After setting aside the objectionable portions of the child protective assessment report, we conclude there is still clear and convincing evidence to support the adjudicatory and dispositional orders. *See* Iowa Code § 232.2(6)(c)(2) (failure to supervise), (n) (drug or alcohol abuse results in inadequate care).

## B. *Ineffective Assistance of Counsel*

As discussed above, the father agreed to participate in therapeutic services before the child-in-need-of-assistance petition was filed. At the adjudicatory hearing, the State offered a discharge report summarizing the father's pre-petition progress. The father objected to admission of the report on the basis of a department social worker's testimony that the referral for these services was a direct result of his positive drug test. The district court proceeded

---

[4] We acknowledge the Iowa Supreme Court's holding in *In re J.S.*, 846 N.W.2d 36, 42 (Iowa 2014) that "general statements about methamphetamine addiction are [not] enough by themselves to prove that a child is imminently likely to suffer physical harm." However, unlike, *J.S.*, the father did not have someone willing and able to step in and relieve him of parenting duties when he was not up to the task. *Id.*

to ask the department employee whether the father signed a release allowing the department to obtain the report. The witness answered, "Yes."

The father contends his attorney should have objected to this question because "[t]he court was not acting as an independent arbiter, but rather was searching out a reason to receive [the exhibit] into evidence."

> The test for ineffective assistance of counsel in termination cases is generally the same as in criminal proceedings. In order to establish an ineffective assistance claim, it must be shown that (1) counsel's performance is deficient, and (2) actual prejudice resulted. We presume that counsel's conduct falls within the range of reasonable professional competency. The burden of proving ineffectiveness is on the claimant.

*In re A.R.S.*, 480 N.W.2d 888, 891 (Iowa 1992) (internal citations omitted).

A court may interrogate witnesses "[w]hen necessary in the interest of justice." Iowa R. Evid. 5.614(b). However, "we have cautioned against assuming the role of an advocate." *See State v. Cuevas*, 288 N.W.2d 525, 533 (Iowa 1980)

Here, the district court judge came close to the line of impermissible advocacy by raising a foundational issue that aided the State. However, the court did not attempt to undermine the father's position that the document flowed from the statutorily unauthorized ex parte drug testing order and, as "fruit of the poisonous tree," was inadmissible. *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). On that score, we note that the document focused on the father's non-compliance with therapeutic services he agreed to undergo rather than the compelled pre-adjudication drug test. For that reason, there is a reasonable probability that the father's objection would not have been successful and the document would have been admitted irrespective of the court's

assistance. In any event, because courts have some leeway in expediting matters, we conclude counsel's failure to object to the district court's question did not amount to deficient performance. *Id.* at 531 ("The presiding judge is not a mere functionary present only to preserve order and lend ceremonial dignity to the proceedings. . . . [A] trial judge has the duty to control and conduct its court in an orderly, dignified and proper manner. In fulfilling its role, occasions will arise when a trial judge is constrained to intervene on its own volition to . . . require that the proceedings move forward without undue delay . . . ." (internal citations omitted)). Accordingly, the father's ineffective-assistance-of-counsel claim fails. *See Mills v. State*, 383 N.W.2d 574, 578 (Iowa 1986) (finding attorney was not incompetent in failing to object to judge's questions).

We affirm the district court's adjudicatory and dispositional orders.

**AFFIRMED.**