# IN THE COURT OF APPEALS OF IOWA

No. 14-1026 and No. 14-1080
Filed October 15, 2014

**IN THE INTEREST OF L.S.,**
    **Minor Child,**

**S.R., Mother,**
    Appellant.


**IN THE INTEREST OF H.S. and E.H.,**
    Minor Children,

**S.R., Mother,**
    Appellant.
_____

Appeals from the Iowa District Court for Floyd County, Karen Kaufman Salic, District Associate Judge.


In separate appeals, a mother challenges adjudication and removal of her youngest child and the termination of her parental rights to two older children. **AFFIRMED ON APPEAL INVOLVING L.S.; REVERSED ON APPEAL INVOLVING H.S. AND E.H.**


Travis M. Armbrust of Brown, Kinsey, Funkhouse & Lander, P.L.C., Mason City, for appellant.

Thomas J. Miller, Attorney General, Bruce Kempkes and Kathrine S. Miller-Todd, Assistant Attorneys General, Normand Klemesrud, County Attorney, and Todd Prichard, Assistant County Attorney, for appellee.

Cynthia Schuknecht, Charles City, attorney and guardian ad litem for minor child.

B. H., father of E.H., Rockwell, pro se.

Considered by Potterfield, P.J., and Tabor and Mullins, JJ.

**TABOR, J.**

A mother appeals two juvenile court orders: the first is a dispositional order removing her youngest daughter, L.S. (Sup Ct. No. 14-1026) and the second is an order terminating parental rights to her older daughters, E.H. and H.S. (Sup. Ct. No. 14-1080).[1]  In the first case, the mother argues the evidence did not support adjudication of L.S. as a child in need of assistance (CINA) or transfer of L.S.'s custody to the Department of Human Services (DHS).  In the second case, the mother contends the State did not prove the grounds for termination under Iowa Code section 232.116(1)(*l*) (2013) and the court should have declined to terminate her rights after considering factors in section 232.116(3).

In the case of L.S., we reach the same conclusion as the juvenile court. While the mother has achieved positive change in her life, she still minimizes the impact of her alcohol dependency on her parenting ability.  Given the mother's shaky insights and short-lived sobriety, we conclude the adjudication and removal of L.S. complied with the provisions of sections 232.2(6)(c)(2) and 232.102(5)(b).

In the case of H.S. and E.H., we are compelled by the record to reverse the termination of the mother's parental rights.  Both the State's petitions for

---

[1] Because these two appeals involve common questions of fact regarding the mother's substance abuse history and ability to safely care for her children, we have consolidated them for consideration in a single opinion.  *Cf. Johnson v. Des Moines Metropolitan Wastewater Reclamation Authority*, 814 N.W.2d 240, 248 (Iowa 2012) (considering trial court's discretion to consolidate actions under Iowa Rule of Civil Procedure 1.913 and balancing potential commonality of fact questions against the risk of prejudice or confusion).

termination and the juvenile court's order quoted an outdated version of section 232.116(1)(*l*). *Compare* Iowa Code § 232.116(1)(*l*)(2) (2011) (requiring court to find parent has "a severe, chronic substance abuse problem") w*ith* Iowa Code § 232.116(1)(*l*)(2) (2013) (requiring court to find parent has "a severe substance-related disorder"). As a result, the juvenile court did not make the finding required under the revised version of the statute. Because the court did not find the mother has a severe substance-related disorder, the termination cannot stand.

## I. Background Facts and Proceedings

The mother gave birth to her eldest daughter, H.S., in June 2008, when she was eighteen years old and living in Alaska. Alaskan authorities contacted the Iowa DHS in September 2009 when the mother fled their state to avoid the removal of H.S. from her care. Those authorities expressed concern the mother was not mentally stable, was abusing drugs and alcohol, and did not have the capacity to parent her daughter.

The mother did not resurface until July 2010 when the Iowa DHS learned she was homeless—living under a bridge with then two-year-old H.S. The mother voluntarily placed H.S. with step-grandparents while she underwent in-patient treatment for substance abuse and mental health problems. Later, in September 2010, H.S. went to live with her great-grandparents, where she remained at the time of the termination hearing.

After her discharge, the mother did not follow through with the treatment recommendations, despite being pregnant with E.H. E.H. was born in August

2011. E.H's father, B.H., and the mother maintained an on-again, off-again relationship marred by incidents of domestic violence. Due to those incidents of violence and with all parties consenting, the juvenile court adjudicated H.S. and E.H. as CINA on January 25, 2012.

In a dispositional order issued on February 23, 2012, the juvenile court decided it was contrary to the children's welfare to return to their parents' care. The order advised the parents that the consequences of a permanent removal may include termination of their parental rights.

The mother showed little consistency in her parenting efforts in 2012. Visits with her children between February and November of 2012 were sporadic. E.H.'s father made sufficient progress that E.H. was returned to his custody in June 2012. But in October 2012, the mother engaged in a fight with E.H.'s father and another woman.

In November, E.H. was in her father's care when the mother was invited over for a birthday celebration, despite the existence of a no-contact order between the parents. The mother became extremely intoxicated and at one point stumbled into a piece of furniture while holding E.H. The father did not contact authorities, instead waiting for the mother to "pass out." As a result, E.H. was removed from her father's care on November 20, 2012.

Shortly thereafter, DHS workers learned the mother was pregnant with her third child. Following that revelation, the mother enrolled in dialectical behavior therapy (DBT) at Prairie Ridge Addiction Treatment Services in Charles City,

starting in January 2013.  Because the mother showed signs of improvement, the juvenile court granted her an additional six months to work toward reunification.

Again, the mother's progress came in fits and starts.  She participated regularly in substance abuse treatment during February 2013, yet drank to the point of intoxication—including an incident where she destroyed property at the home of E.H.'s father and slapped him in the face.  In the spring of 2013, her participation in treatment services continued to be intermingled with bouts of heavy drinking.  During this period of time, the juvenile court believed the mother was not being honest about her alcohol use.  A May 2013 report from Prairie Ridge diagnosed the mother with "[a]lcohol dependence & cannabis dependence both in sustained partial remission."  The mother's substance abuse counselor testified at a review hearing in August 2013 that the mother had made significant progress in her treatment.

But after L.S. was born in August 2013, the mother's sobriety suffered several setbacks.  According to her friend, the mother got drunk at a concert on September 1, 2013.  In October 2013, the mother split a gallon of vodka with three or four other people.  On November 18, 2013, the mother tested positive for alcohol.  The most dramatic incident occurred on November 23, 2013, when the mother drank heavily and entered a burning house.  Her injuries were so serious she was airlifted to University Hospitals in Iowa City for treatment.

After her hospitalization, the mother was slow to participate in regular testing for alcohol use.  She did not reappear for testing until February 3, 2014 when she tested positive for alcohol.  She did not show up for testing again until

February 24, 2014, when she said she would only provide a urine sample if asked. She did return to testing three days a week in early March 2014. The mother had not tested positive for alcohol for three months at the time of hearing.

On April 18, 2014, the State filed petitions to terminate the mother's parental rights to E.H. and H.S. The petitions alleged the mother's rights should be terminated under section 232.116(1)(*l*), contending the State could establish she had "a severe, chronic substance abuse problem."

On May 15, 2014, the juvenile court adjudicated L.S. as a CINA as defined in section 232.2(6)(c)(2) and (n). The court characterized the mother's alcohol addiction as "profound" and noted that during her testimony at a March 27, 2014 permanency hearing for her older daughters, the mother was "in complete denial" concerning her substance abuse problem.[2] The court allowed L.S. to stay in her mother's care subject to DHS supervision, reasoning the facts did not justify emergency removal. But the court emphasized it would "certainly consider all placement options thought to be in the best interest of the child" at the time of the dispositional hearing.

On June 12, 2014, the juvenile court held a dispositional hearing concerning L.S. The court issued an order that same day, continuing L.S.'s CINA status, and ordering her removed from her mother's care.

Four days later, on June 16, 2014, the juvenile court held a hearing on the State's petitions to terminate the mother's parental rights to her older daughters.

---

[2] The mother testified during that hearing: "I don't think I have an alcohol problem, but I do know I have triggers, and I need to keep continuing to go to Prairie Ridge like I am doing to make sure I can stay away from it."

On that same day, the court issued its ruling that terminated the mother's parental rights to H.S. and E.H.[3] The court relied on subsection (*l*), finding the mother had "a severe chronic substance abuse problem."

The mother now appeals the adjudication and the removal of L.S., as well as the termination of her parental rights to H.S. and E.H. We will address each juvenile court proceeding in turn.

## II. Standards of Review

Our standard of review for both appeals is de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014); *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002). In exercising de novo review, we are not bound by the juvenile court's factual findings, but we do give them weight, especially when it comes to witness credibility. *A.M.*, 843 N.W.2d at 110. To the extent the mother's claims of error rest upon statutory interpretation, we review for the correction of legal error. *In re D.S.*, 806 N.W.2d 458, 465 (Iowa Ct. App. 2011).

## A. Adjudication and Removal of L.S.

The juvenile court adjudicated the youngest child, L.S., to be a CINA on May 15, 2014, relying on sections 232.2(6)(c)(2) and (n).[4] In the June 12, 2014

---

[3] The order also terminated the parental rights of H.S.'s father, but he is not a party to this appeal. The parental rights of E.H.'s father were not terminated.

[4] 6. "Child in need of assistance" means an unmarried child:

   . . . .

   c. Who has suffered or is imminently likely to suffer harmful effects as a result of any of the following:

   . . . .

   (2) The failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child.

   . . . .

dispositional order being appealed, the court cited only section 232.2(6)(c)(2). The mother challenges that ground for adjudication, as well as the child's removal from her care.

The juvenile court based the adjudication on the mother's "unresolved substance abuse issues and an inability to provide proper supervision." The court was concerned about the mother's history of dishonesty regarding her alcohol consumption. For instance, at the June 12, 2014 dispositional hearing, the mother denied consuming alcohol around her children and insisted she had never cared for L.S. while intoxicated. The court found these statements to be "untrue" or at least a "hair-splitting exercise" and recited three instances in which the mother arrived to pick up L.S. from a babysitter while intoxicated.

Like the district court, we find the mother's June 12, 2014 testimony revealed her continued lack of insight into the depth of her alcohol addiction and the risk of drinking. She acknowledged having a psychological evaluation that recommended she abstain from alcohol. Yet, when asked if she would admit alcohol can be a problem for her, she hedged: "Depending on the environment and my mood or my status, yes." When asked if she thought "testing" the strength of several shots of alcohol at her work in preparation for a celebration of St. Patrick's Day was a good choice, she responded: "Nothing bad happened, so, I'm going to say it wasn't a bad choice, but it probably wasn't the most responsible."

---

n. Whose parent's . . . drug or alcohol abuse results in the child not receiving adequate care.

The mother contends the State did not present clear and convincing evidence L.S. was imminently likely to suffer harmful effects as a result of her failure to exercise a reasonable degree of care of the child. *See* Iowa Code § 232.2(6)(c)(2). We disagree. The mother's drinking, especially since the birth of L.S., and her tendency to minimize its negative impact, raise concern about her ability to exercise a reasonable degree of care for L.S. The mother has demonstrated a cavalier attitude toward selecting care providers and has been unable to recognize alcohol impairment is incompatible with safe parenting. *See In re A.C.*, 852 N.W.2d 515, 520 n.4 (Iowa Ct. App. 2014) (concluding father's drug use posed imminent risk of harm to child when he did not have care givers "willing and able to step in and relieve him of parenting duties when he was not up to the task").

We also conclude the juvenile court's removal of L.S. from her mother's care and placement with a relative was justified as the least restrictive disposition appropriate considering all the circumstances of the case. *See* Iowa Code §§ 232.99(4), 232.102(5)(b). The mother deserves credit for undergoing treatment and developing a close connection with L.S. In deciding the least restrictive placement, the court recognized the strong bond between mother and child, but found "it is more essential that [L.S.'s] physical well-being be secured." The dispositional order directed the mother to "follow through with all substance abuse treatment recommendations" and to submit to alcohol testing as directed by the DHS or the treatment provider, as well as to participate in FSRP (family safety, risk, and permanency) services. Under the circumstances, we find DHS

custody and enforcement of the dispositional order are appropriate. The order provides the mother with an opportunity to demonstrate she is able to provide care for her daughter. *See In re A.M.H.*, 516 N.W.2d 867, 874 (Iowa 1994).

## B. Termination of Parental Rights to H.S. and E.H.

We now move to the question of terminating the mother's parental rights regarding the two older children. The juvenile court severed her legal ties with H.S. and E.H. based on section 232.116(1)(*l*), the only subsection alleged in the State's petitions. To terminate under that provision, the court must find clear and convincing evidence in support of the following elements:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
> (2) The parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts.
> (3) There is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

Iowa Code § 232.116(1)(*l*) (2013).

The mother challenges the State's proof of all three elements.[5] She first claims the children were not removed from her custody under section 232.102. Second, she contests the State's proof that she has a "severe substance-related disorder" that poses a danger to herself or the children. And third, she contends

---

[5] The State asks us to find that these challenges were not preserved because they were not specifically argued to the juvenile court. We decline to do so. The mother's attorney noted at the hearing she was contesting the State's basis for termination and the burden remained on the State to prove all three elements by clear and convincing evidence. We also commend the mother's attorney for a thorough illumination of the statutory arguments in the petition on appeal.

the State did not establish the children could not return home in a reasonable amount of time if she maintains her sobriety.

We need only address the second element because it is dispositive of the outcome. The State alleged and the juvenile court found the mother had a "severe chronic substance abuse problem." That language was from the pre-2012 version of section 232.116(1)(*l*)(2). In 2011, the legislature amended this provision, replacing the phrase "severe, chronic substance abuse problem" with "severe substance-related disorder." See 2011 Iowa Acts ch. 121 § 58 (effective July 1, 2012). In the same enactment, the legislature defined "substance-related disorder" as "a diagnosable substance abuse disorder of sufficient duration to meet diagnostic criteria specified within the most current diagnostic and statistical manual [DSM] of mental disorders published by the American psychiatric association [APA] that results in a functional impairment." *Id.* § 26 (codified at Iowa Code § 125.2(14)). The mother argues: "The legislature unambiguously shifted the determination from a general 'persistent problem' approach to a clinical diagnosis requirement."

The State disagrees, contending the revised language in section 232.116(1)(*l*)(2) did not signal the legislature's requirement of a clinical diagnosis. The State cites a Legislative Services Agency (LSA) report that describes the 2011 bill as an act related to "reforming state and county responsibilities for adult disability services [and] making appropriations."[6] The LSA summary discussed the definition of "substance-related disorder" added to chapter 125 and the

---

[6] 2011 Summary of Legislation, Iowa General Assembly, Legislative Services Agency, www.legis.iowa.gov/docs/publications/SOL/401779/pdf.

substitution of that term for a variety of references—from "chemical dependency" to "chronic substance abuser" to "intoxicated person"—across several different code chapters. But the LSA recap did not specifically mention the change to section 232.116(1)(*l*)(2). The State divines from that omission that the revision to chapter 232 should not have the impact urged by the mother in this appeal.

In examining the parties' statutory interpretation arguments, we look first to the presumption that when the legislature amends a statute, it intends to change its meaning. *See Martin v. Waterloo Cmty. Sch. Dist.*, 518 N.W.2d 381, 383 (Iowa 1994). This presumption can be overcome by legislative history or an accompanying explanation that the amendment's intent was only to clarify existing law, but that is not the situation here. *See id.* The legislature adopted the term "substance-related disorder," defined it, and then replaced less precise existing terms in various code chapters with the defined term. The code sections now using the defined term are *in pari materia*, that is, they pertain to the same subject matter, and should be construed together. *See* 2B Sutherland Statutory Construction § 51:3 (7th ed. 2008) (explaining rule that statutes *in pari materia* should be construed together has the greatest probative force for statutes relating to the same subject and passed at the same legislative session, especially if they were passed or approved or take effect on the same day); *see also State v. Dowell*, 297 N.W.2d 93, 96 (Iowa 1980).

Reading these statutes *in pari materia* requires juvenile courts to apply the definition of "substance-related disorder" at section 125.2(14) when deciding whether the evidence satisfies the ground for termination under section

232.116(1)(*l*)(2). It is no longer sufficient for the court to assess in lay terms whether the parent suffers from "a severe, chronic substance problem." The definition of substance-related disorder requires consideration of diagnostic criteria from the DSM-5.

Acknowledging the chapter 125 definition may apply in chapter 232 proceedings, the State flags the word "diagnosable"—contending the definition "does not require that the disorder already be diagnosed." The State asserts the issue is "whether it can be diagnosed."[7] The State believes the existence of the disorder may be revealed through "substance abuse history, cycles of sobriety and relapse, unsuccessful treatment, inability to prioritize the children, inability to hold employment, substance abuse evaluations, et al."

Rather than highlighting any of its own evidence on appeal the State points to an exhibit offered by the mother concerning her alcohol addiction. At the termination hearing, the mother offered a Prairie Ridge treatment report, which was more than a year old. That May 2013 report diagnosed the mother with alcohol and cannabis dependence in sustained partial remission. At the termination hearing, the State offered no more up-to-date evidence indicating the mother had a "severe substance-related disorder." In fact, in response to cross examination from the mother's attorney, the DHS case worker testified she did

---

[7] Although we do not reach the question in this case whether diagnosis of a disorder would require expert testimony, we note that in other contexts, such as medical malpractice, our courts have required the introduction of expert testimony when the issue involves "highly technical questions of diagnoses" that "lie beyond the understanding of a layperson." *See Donovan v. State*, 445 N.W.2d 763, 766 (Iowa1989).

not know if the mother's condition had ever been diagnosed or described as a "severe substance related disorder" and as far as she knew it had not been.

Given this concession by the DHS worker, it would be difficult to conclude the State offered clear and convincing evidence the mother had a severe substance-related disorder. But the problem is even more fundamental in this case. Both the State's petitions for termination and the court's ruling relied on outdated statutory language. The court did not make a finding the mother had a severe substance-related disorder as required by the current version of section 232.116(1)(*l*)(2).

After reviewing these petitions on appeal, we have four options for disposition; we may affirm or reverse the order, remand the case, or set the case for briefing. Iowa R. App. P. 6.205. We do not have the option of substituting our own judgment or supplementing the order of the juvenile court. Although we have de novo review, the absence of a ruling based on a viable statute leaves us with nothing to review. *Cf. United States v. Tucker*, 386 N.W.2d 273, 278 (D.C. Cir. 2004) ("De novo review is still review. . . ."). Accordingly, the termination is invalid and must be reversed.[8] *Cf. State v. Beach*, 630 N.W.23d 598 (Iowa 2001) (vacating sentence based outdated code section).

**AFFIRMED ON APPEAL INVOLVING L.S.; REVERSED ON APPEAL INVOLVING H.S. AND E.H.**

---

[8] Because we reverse the termination under section 232.116(1)(*l*), we need not address the mother's challenges under section 232.116(3).