# IN THE COURT OF APPEALS OF IOWA

No. 19-1562
Filed November 27, 2019

IN THE INTEREST OF A.M.,
Minor Child,

P.M., Father,
        Appellant.
_____

Appeal from the Iowa District Court for Dickinson County, David C. Larson, District Associate Judge.

A father appeals adjudicatory and dispositional orders in a child-in-need-of-assistance action. **AFFIRMED.**

Pamela Wingert of Wingert Law Office, Spirit Lake, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Shannon Sandy of Sandy Law Firm, Spirit Lake, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., May, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**MAHAN, Senior Judge.**

A father appeals adjudicatory and dispositional orders in a child-in-need-of-assistance action. Upon our review, we affirm the juvenile court's orders.

## I. *Background Facts and Proceedings*

A.M. was born in June 2018. On July 26, the mother reported to law enforcement that she believed A.M. had been poisoned. The mother, who was acting "very psychotic and extremely paranoid," was taken to the emergency room where she tested positive for amphetamines and methamphetamine. A.M. tested negative for all controlled substances. The father, who is married to the mother, arrived at the emergency room, but hospital staff requested assistance from law enforcement because he became "very aggressive" and "out of control." Law enforcement was familiar with the father and reported he had a history of drug dealing and had recently been charged with domestic-abuse assault against the mother. The mother did not believe the father was a safe placement for A.M. She did not provide a clear answer as to whether the father was also using drugs. The mother was transferred to a mental-health treatment facility. An emergency order was entered removing A.M. from the parents' care, and the State filed a petition alleging A.M. to be a child in need of assistance.

The department caseworker contacted the father, who stated he would take a drug test "right then and there." The caseworker was not able to schedule a test until August 1, the day of the temporary removal hearing. At the hearing, the father again testified he would take a drug test. The father had pending charges for possession of methamphetamine and marijuana, but he stated the methamphetamine was his former roommate's. The father was on pretrial release

for those charges, and he testified he had "given some" drug tests to his correctional-services officer. He acknowledged he had a lengthy criminal history. He stated he pled "no contest" to domestic-assault charges against the mother and he was scheduled to begin a court-ordered domestic-abuse class that afternoon. He requested the child be placed in his care.

The mother testified, and she also requested A.M. be placed with the father. The department recommended continued removal of A.M. from the parents, citing the parents' relationship and history of domestic violence, the father's lengthy criminal history, and A.M.'s young and vulnerable age. The court's August 2 order returned A.M. to the father but ordered the mother to have no unsupervised contact with the child.

The next day, the department applied for another temporary removal order, alleging the father had refused to take a drug test on August 1 as he testified he would. The department also reported it had learned the father had never taken a drug test for his correctional-services officer. The department also reported the father had not attended the domestic-abuse class he testified about at the August 1 hearing. The court entered an order on August 3, removing A.M. from the father's care for placement in foster care where he remains today.[1]

The temporary removal hearing was continued by agreement of the parties and heard concurrently with the adjudication hearing over two days in November and December. Caseworkers testified the father had refused to take any drug tests offered by the department because "he didn't feel that he needed to, he

---

[1] Due to the timing of the two court orders, it appears A.M. was not physically placed in the father's care between the August 2 and August 3 orders.

wasn't required to [and] because [the department] was in the wrong in the first place."  The father had attended "some" domestic-violence classes, but he informed the program's staff he did not have money to attend in the future.  Yet he also told staff "he would just like to pay the thousand dollar fee and just not do any of the classes straight up and then asked if [the program director] could be bribed." A caseworker testified the department had appointed a male caseworker to the case due to "safety concerns" about the father.  The caseworker explained, "We always kind of feared for our safety with [the father] and we know he always had knives."

After admitting to relapsing on methamphetamine in September, the mother began engaging in substance-abuse treatment.  She moved out of the home she shared with the father and filed for dissolution of marriage so she could "get [her] child back."  The mother testified she "highly disagreed with [the father's] behavior" in refusing to participate in drug testing "until a judge's order."

Following the hearing, the juvenile court entered an order concluding

> [the] child [is] in need of assistance [and] continued removal is necessary to avoid imminent risk to [A.M.]'s life or health due to his inability to self-protect and due to there being insufficient progress in addressing the substance abuse issues, mental health issues, and domestic violence issues identified following the removal in this case.

The court ordered the father to participate in substance-abuse treatment, submit to drug testing, and complete a domestic-abuse intervention program.  At a subsequent dispositional hearing, the court maintained the status quo.  The father appealed.

## II.    *Standard of Review*

We review child-in-need-of proceedings de novo.  *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001).  In reviewing the proceedings, although we are not bound by the juvenile court's fact findings, we do give them weight.  *Id.*  "As in all juvenile proceedings, our fundamental concern is the best interests of the child."  *Id.*

## III.    *Issues on Appeal*

The father contends "[t]he first removal was premised solely on circumstances regarding the mother."  According to the father, he "was present at the hospital and ready to take custody of his child when the mother's postpartum psychosis and drug use prevented her from providing adequate care for A.M."  The State contends this question is moot because the subsequent dispositional order confirmed the removal of the child.  *See In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994) ("Any error committed in granting the temporary ex parte order cannot now be remedied.  We cannot go back in time and restore custody based on alleged errors in the initial removal order."); *In re J.C.*, No. 11-0002, 2011 WL 648939, at *3 n.1 (Iowa Ct. App. Feb. 23, 2011) ("We hold the dispositional orders . . . rendered moot any issue regarding the child's removal.").  In any event, we note the first temporary removal order *did* place the child with the father.  After that order, the court received additional information raising concerns regarding the safety of A.M. in the father's care and the court issued a second order transferring custody of the child to the department for placement in foster care.  The father's argument that the child's removal was premised solely on the mother's circumstances is not persuasive.

The father next claims his "constitutional right to care for his child should not have been infringed based upon his failure to submit to a worker's request for drug testing." To support his contention, he relies on *In re A.C.*, 852 N.W.2d 515, 518–19 (Iowa Ct. App. 2014), in which the court found there was "no statutory authority to support the district court's ex parte pre-adjudication parental drug-testing order." And "by extension, the department, lacks authority to require [drug testing] at the pre-adjudication stage." *In re D.S.*, No. 14-2021, 2015 WL 800084, at *2 (Iowa Ct. App. Feb. 25, 2015).

We acknowledge the juvenile court and the department relied, in part, on the father's refusal to undergo drug testing at the time of removal. But, even without this evidence, the record contained ample other evidence to support the court's adjudicatory and dispositional orders, including but not limited to domestic violence and drug use in the home; the mother's mental-health issues; and the father's criminal history, pending criminal charges, and failure to follow through with recommended services. We affirm the adjudicatory and dispositional orders entered by the juvenile court.

**AFFIRMED.**