# IN THE COURT OF APPEALS OF IOWA

No. 21-1736
Filed March 30, 2022

**IN THE INTEREST OF E.W.,**
**Minor Child,**

**D.W., Father,**
   Appellant.
_____

Appeal from the Iowa District Court for Polk County, Romonda D. Belcher, District Associate Judge.

A father appeals the juvenile court's adjudication of his daughter as a child in need of assistance. **AFFIRMED.**

Randall L. Jackson, Des Moines, for appellant father.

Anjela A. Shutts of Whitfield & Eddy, P.L.C., Des Moines, for appellee mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Bo Woolman and Erin Mayfield (until withdrawal) of the Youth Law Center, Des Moines, attorneys and guardians ad litem for minor child.

Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**TABOR, Presiding Judge.**

The juvenile court adjudicated E.W. as a child in need of assistance (CINA), finding the four-year-old had been, or was imminently likely to be, sexually abused by her father. *See* Iowa Code § 232.2(6)(d) (2021). The father contests the sufficiency of the State's evidence and the admission of hearsay at the adjudication hearing. Finding clear and convincing proof to support the CINA adjudication and no reversible error in the admission of evidence, we affirm.[1]

## I.    Facts and Prior Proceedings

E.W. was born in 2017. Her parents divorced in June 2020. The decree granted the parents joint legal custody. The mother has physical care, and the father has visitation. During a spring 2021 visit, her father touched her vagina with his hand and tongue. E.W. told her mother, and her mother reported the alleged sexual abuse to the Iowa Department of Human Services (DHS). A child protective services investigation returned a founded report of child abuse on allegations that the father placed his mouth on E.W.'s genitals. Her report of hand-to-genital contact was not confirmed.

In July, the State filed a CINA petition, citing Iowa Code section 232.2(6), paragraph (b) (physical abuse or neglect), paragraph (c)(2) (inadequate supervision), and paragraph (d) (sexual abuse). At two September hearings, the juvenile court heard from the DHS child protection investigator and the mother. Over objections from the father's counsel, those witnesses shared out-of-court

---

[1] Our overarching standard of review in child-welfare cases is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). But we review component hearsay rulings for correction of errors at law. *In re A.B.*, No. 21-1495, 2022 WL 108586, at *2 (Iowa Ct. App. Jan. 12, 2022).

statements from E.W.  The father's counsel also lodged hearsay objections to the State's offer of police reports, a letter from E.W.'s therapist Abby Sohn, and the child protective assessment.  The juvenile court overruled those objections and admitted the exhibits.  In October, the juvenile court granted the CINA petition, citing only paragraph (d).  In a November dispositional order, the court left the child in her mother's care under DHS supervision.

The father now appeals the CINA adjudication.  Both the State and the mother file responsive petitions defending the juvenile court's order.

## II.      Analysis

## A.      Hearsay Objections

The father argues that the juvenile court improperly admitted hearsay evidence at the adjudication hearing.  Hearsay means a statement made by a declarant outside the current court hearing and offered into evidence "to prove the truth of the matter asserted in the statement."  Iowa R. Evid. 5.801(c).

In his petition on appeal, the father complains that the court "permitted numerous exhibits" to be admitted over hearsay objections and "permitted the witnesses to testify to out-of-court statements made by third parties, including E.W." The State rightly critiques his complaints as lacking in specificity as to which "objections he believes were incorrectly overruled and what exact testimony he is now claiming should have been excluded."

We recognize that the expedited briefing schedule in child-welfare appeals often restricts counsel's ability to review and cite the transcript of the proceedings.  *See* Iowa Rule of App. P. 6.201.  But, at the same time, we cannot do counsel's job from the bench.  *See Matter of Est. of DeTar*, 572 N.W.2d 178, 180 (Iowa Ct.

App. 1997) (declining to undertake advocacy when brief fails to guide appellate court). By our count, the father's counsel objected more than a dozen times on hearsay grounds at the adjudication hearing. But counsel makes no effort to pinpoint which of those overruled objections he is contesting on appeal. As a matter of grace, we will try to decipher what evidence the father now finds objectionable, but only as long as we can do so without assuming a partisan role. *See id.* at 181.

We start with the five exhibits that the father's counsel challenged as hearsay. Exhibits 3 and 4 were police reports against the father for offenses unrelated to E.W. and Exhibit 6 was a complaint alleging he violated a no-contact order protecting the mother. The State asserts these records related to E.W.'s safety if left in the father's care and thus were admissible under Iowa Code section 232.96(6).[2] But we need not decide their admissibility. The juvenile court did not rely on them to adjudicate E.W. as a CINA under section 232.2(6)(d) and neither does our court in affirming the adjudication.

Next, we consider Exhibit 1, a letter from social worker Abby Sohn who had six weekly therapy sessions with E.W. called "Discovery Work." Sohn described the program as "an extended evaluation method of therapy which is utilized in

---

[2] That section provides:
> A report, study, record, or other writing . . . made by the department of human services, a juvenile court officer, a peace officer or a hospital relating to a child in a proceeding under this subchapter is admissible notwithstanding any objection to hearsay statements contained in it provided it is relevant and material and provided its probative value substantially outweighs the danger of unfair prejudice to the child's parent, guardian, or custodian.

Iowa Code § 232.96(6).

cases which abuse is suspected." Sohn's letter detailed her conversations with E.W., including E.W.'s unprompted disclosure that "Daddy is touching my vagina." When asked what he touches it with, E.W. responded: "His tongue." The juvenile court mentioned the Discovery Work revelations in its adjudication order.

The State first argues the Sohn letter is admissible under section 232.96(6), in the same category as a forensic interview completed at a child protection center. *See In re E.H. III*, 578 N.W.2d 243, 246 (Iowa 1998). But, as the State acknowledges, Sohn's employer, Orchard Place Child Guidance Center, is not a hospital, as required to avoid hearsay rules under the statute. Iowa Code § 232.96(6). In the alternative, the State contends the therapist's letter was admissible under the hearsay exception for statements made for purposes of medical treatment or the residual exception. *See* Iowa R.s Evid. 5.803(4), 5.807; *see generally State v. Skahill*, 966 N.W.2d 1 (Iowa 2021) (analyzing applicability of the medical exception to medical versus non-medical or professional declarants in a sexual abuse case). Trouble is, those arguments do not address the first layer of hearsay. The State did not call Sohn as a witness, so her written recollections of E.W.'s disclosures were themselves out-of-court statements offered for the truth of the matter asserted.

After rejecting those grounds for admissibility, we turn to the State's last try—that allowing the Sohn letter into evidence was not reversible error because the substantive portions of the exhibit were subsumed in Exhibit 7, the child protective assessment. With that argument we agree. That report was admissible over counsel's hearsay objections. *See* Iowa Code § 232.96(4), (6); *see also In re A.C.*, 852 N.W.2d 515, 518 (Iowa Ct. App. 2014). And it incorporated all of the

same statements made by E.W. to therapist Sohn. The juvenile court did not err in relying on the child protective assessment along with other evidence.

Finding no reversible error in the admission of the State's exhibits, we turn to the challenged testimony. As mentioned above, the father's attorney fails to point to the particular statements he is challenging on appeal. After arguing waiver stemming from that lack of precision, the State contends that any of E.W.'s statements related during the testimony of the DHS social worker and the mother were not offered for the truth of the matter asserted, but to show the testifying party's later actions. *See State v. Banes*, 910 N.W.2d 634, 642 (Iowa Ct. App. 2018) (noting that when out-of-court statement is offered, not to show the truth of the matter asserted but to explain responsive conduct, it is not viewed as hearsay). We agree that many of the child's out-of-court statements were admissible under that theory. The responsive conduct of the witnesses was relevant to how the juvenile court decided to address the CINA petition. *See id.* (explaining that for statements to be admissible as showing responsive conduct, they must be relevant to some aspect of proponent's case). Here, the court noted the mother "has demonstrated protective capacity" and ordered that she retain temporary legal custody under DHS supervison. We decline to reverse the CINA adjudication on hearsay grounds.

### B.    Clear and Convincing Evidence

The father also argues that the State failed to prove its case by clear and convincing evidence. He contends that the child protective assessment cannot, standing alone, support the CINA adjudication. And he attacks the mother's testimony as inconsistent and limited in detail about E.W.'s alleged abuse.

We agree that child protective assessment cannot be the sole basis for an adjudication. *See* Iowa Code § 232.96(4); *In re D.S.*, No. 14-2021, 2015 WL 800084, at *1 (Iowa Ct. App. Feb. 25, 2015). But here it was not. The State offered corroborating evidence from the mother that one day in March 2021 she went looking for E.W., expecting to find her playing in her bedroom. Instead, the mother saw her four-year-old daughter touching her own vagina, "like self-stimulating kind of gyrating back and forth." The mother recalled that E.W. was "very upset" and crying, "like a hurt cry." It was then that E.W. revealed that her father had touched her vagina. That revelation prompted the mother to contact the DHS. The DHS arranged for a forensic interview. But interviewers couldn't understand E.W., who struggles with speech development and is working with a speech pathologist. So the DHS could not confirm the abuse report.

But E.W. continued to make concerning statements to her mother. For example, later that spring, E.W. told her mother to "lick her butt." Another time, E.W. asked her mother, out of the blue, if the father "was in time-out again." The mother said, "No, should he be?" In response, E.W. disclosed that the father had touched her vagina with his tongue. Indeed, the mother had noticed some redness in the child's vagina in May. As these disclosures continued at home, E.W. was attending the "Discovery Work" therapy sessions. The mother did not share E.W.'s statements about her father "licking" her with therapist Sohn. But as the child protective worker learned from Sohn, E.W. repeated that same allegation independently in therapy. We find this corroboration heightens the credibility of E.W.'s claims of sexual abuse. *See In re N.C.*, 952 N.W.2d 151, 156 (Iowa 2020).

All told, we find the admissible evidence in the record supported the juvenile court's CINA adjudication.

**AFFIRMED.**